## HEATON-PENINSULAR BUTTON-FASTENER CO. v. ELLIOTT BUTTON-FASTENER CO.

(Circuit Court, W. D. Michigan, S. D. October 13, 1893.)

1. PATENTS FOR INVENTIONS—BUTTON FASTENER—ANTICIPATION.

The invention for which letters patent No. 293,234 were issued, February 12, 1884, to Charles H. Eggleston, for a setting instrument for attaching buttons to leather and other fabrics, was not anticipated by the device covered by letters patent No. 212,316, No. 220,932, and No. 220,-933, granted to McGill, for attaching sheets of paper together; for although both patentees used devices for driving a metallic staple through the material and clinching its ends on the other side, and the McGill de-

vice could be adapted to fastening buttons, yet McGill had not contemplated such use of it, and the slot device of the Eggleston patent for guiding the button is not found in the McGill device, or, if found, is not used for the same purpose; and, further, the Eggleston patent had been sustained by the courts in two prior cases.

2. SAME—VALIDITY—FORCE OF PRIOR DECISIONS.

In patent causes, where an issue has once been passed upon by a circuit court, it is only in a case of clear mistake of law or fact, of newly-discovered testimony, or upon some question not considered by the court, that a circuit court sitting in another district is at liberty to review the findings, and it will not do so merely because there is doubt as to whether the patent in issue has been anticipated, when that question has been previously passed upon.   Searls v. Worden, 11 Fed. Rep. 501, followed.

3. SAME—INFRINGEMENT—BUTTON-FASTENING DEVICE.

Letters patent No. 293,234, issued February 12, 1884, to Charles H. Eggleston, for a setting instrument for attaching buttons to leather and other fabrics by driving through the fabric, and clinching on the opposite side thereof, a metallic staple passed through the eye of the button, is infringed by Elliott's machine, in which the buttons are automatically fed to a certain point, where a piece of wire is passed through the eye, bent into a staple, placed in a guide, driven through the material and clinched upon its underside, for the Elliott machines use the narrow slot of the Eggleston machine to hold the eye of the button, and the widening of this slot at its lower end neither adds to nor detracts from the operation of the machine in any way, and fulfills no essential purpose, and the other devices for driving and clinching the staple are the same in both machines.

In Equity.   Bill by the Heaton-Peninsular Button-Fastener Company against the Elliott Button-Fastener Company for infringement of letters patent.   Decree for complainant.

Statement by BROWN, Circuit Justice:

This was a bill in equity for the infringement of letters patent No. 293,234, issued February 12, 1884, to Charles H. Eggleston, for a setting instrument for attaching buttons to leather and other fabrics.

In his specification the patentee states: "The invention relates to that class of setting devices used in clinching metallic staples or fasteners which engage with the eye of the button, and have prongs which pass through the fabric, and are clinched on the side of the fabric opposite the button; and the object of my invention is to produce a setting device which can be used conveniently for setting and clinching an ordinary metallic staple, and have the two prongs of the staple, if desired, in a line at right angles with the strain on the button."

This the patentee accomplishes by means of a guide provided with a slot and groove placed between, and in combination with, a pair of jaws, the groove and slot being so arranged that the groove will receive the staple, and the slot the eye, of the button. One of the jaws has a projection, so that, when the jaws are brought towards each other, the projection passes into the groove of the guide. This projection is provided with a recess or slot, P, leaving two projections, one on either side of the slot, and each grooved so as to fit upon the back of the staple.

In operation, the staple is placed in the eye of the button, and then placed in the groove, t, in the guide, G, the points of the staple being towards the jaw, J, and the rounded portion towards J'. The slot, i, receives the upper part of the button eye, and allows it to be moved freely therein. By closing the jaws, the staple is driven through the fabric, and, coming in contact with the grooved face, C, of jaw, J, the points are turned towards each other and clinched, thereby attaching the button to the fabric. There was but a single claim to the patent, which read as follows: "In a button-setting instrument, the guide, G, provided with the slot, i, and groove, t,

placed between and in combination with the jaws, J and J, the groove, t, and the slot, i, being so placed with reference to each other that the groove will receive the staple, and the slot, i, the eye, of the button, substantially as described."

The defenses were the usual ones of noninvention and noninfringement.

Sweet & Perkins, (Jas. H. Lange, of counsel,) for complainant.

T. J. O'Brien, (Taggart & Denison and John R. Bennett, of counsel,) for defendant.

BROWN, Circuit Justice, (after stating the facts.) While a large number of patents were put in evidence, either to anticipate or limit the Eggleston patent, the question of anticipation really turns upon the several patents to McGill, numbered 212,316, 220,932, and 220,933, covering devices for inserting metallic staples in papers; devices which, in their most improved form, have gone into general use for attaching legal papers together in a manner convenient for filing. Patent No. 212,316, the one most relied upon, exhibits an upright case, D, containing a plunger, F, and a spiral spring attached to raise the plunger after the staple is inserted. The plunger consists of a metallic cylindrical rod having at its base an enlargement, which latter is provided on opposite sides with feathers, which are forced down on the head of the staple, driving the shanks of the latter out of the guide, and supporting grooves through the articles, which are placed on an anvil adapted to bend the shanks of the staple in towards each other, clinching them against the underside of the papers to be attached together. In this connection the patentee states that "a staple provided with almost any shape or struck-up form of head may be inserted with this device, by mortising out the face of the plunger, F, so that the bottom of its feathers will always rest upon the top of the shoulders of the staple."

This device, which bears a closer resemblance to plaintiff's patent than any other put in evidence, was evidently not designed for the purpose of fastening buttons to cloth or leather, or driving staples with buttons strung upon them; and, while the experiments made in the presence of the court indicated that it can be adapted to such use, it could not be made effectual for that purpose without certain changes, which Eggleston seems to have been the first to make. The idea that a staple with a button strung upon it could be guided and driven through a tube was apparently new with Eggleston, and the carrying out of such idea required certain changes to be made in the McGill patent which were not very radical, but which never seem to have occurred to any one prior to Eggleston. Doubtless, a patentee is entitled to a monopoly of his invention for all purposes; but where it is designed for a particular purpose, and another has taken it, and, by certain changes in its construction, has adapted it to an entirely different purpose, the evidence of its original adaptation for such new purpose ought to be reasonably clear and convincing to deny the improver the benefit

of a patent for such new adaptation. Whatever be the technical rights of the original patentee, the equities of the patent law do not require that he should be protected for any use of his device beyond that originally contemplated by him, unless such new use involve changes of a purely trivial character. The evidence that the new use conceived by Eggleston was not contemplated is scarcely weakened by the testimony of McGill that his device was not devised by him for the special purpose of putting on the market an instrument for setting buttons on shoes, but that was an obvious use, "and in fact it did occur to me when I first made Exhibit A, in 1879, that the tool could be used for attaching buttons to cloth, leather, etc., and I on several occasions then and since showed to others its capabilities of such use by actually setting buttons."

Without going into details of the difference between the two devices, it is sufficient to say that the slot, i, of the Eggleston patent, which is made sufficiently narrow to act as a guide for the button, at least up to the point where the eye of the button is engaged by the recess, P, in the jaw, J', is not found in McGill's device, or, if found there at all, not used for the purpose for which Eggleston employed it, and not capable of such use except in a very awkward and insufficient manner.

But, assuming it to be a question of doubt whether the changes made in the McGill patent did involve invention, the fact that the patent has already been sustained in two other cases—one decided by Judge Colt of the first circuit, in the case of Peninsular Novelty Co. v. American Shoe-Tip Co., 39 Fed. Rep. 791, and the other by Judge Severens, in the case of Peninsular Novelty Co. v. Olds,[1] —is sufficient of itself to turn the scale in favor of the patent. We repeat here the language which was used in Searls v. Worden, 11 Fed. Rep. 501:

"That in patent causes, where the same issue has been passed upon by the circuit court sitting in another district, it is only in a case of clear mistake of law or fact, of newly-discovered testimony, or upon some question not considered by such court, that we feel at liberty to review its findings."

Upon the question of infringement, the main defense is that the Elliott machine, with which the defendant is operating, does not have the guide of the Eggleston patent with its front slot, i, which, as before indicated, is really the essence of his invention. Defendant's machine is of a different class from that of the plaintiff's—a power machine in which the buttons are automatically fed to a certain point, where a straight piece of wire from a continuous roll is passed through the eye of the button, cut to a proper length, and bent around a former into a staple, where the former is withdrawn, leaving the staple with the button strung upon it in a guide provided with a groove for embracing and guiding the legs of the staple, and is then driven by the action of a driver through the guide into the material, and the legs of the staple

[1] Not reported.

clinched against the underside of the material by the action of an anvil. In this connection defendant does show a front slot, which up to a certain point subserves the purpose of guiding the button; but it is claimed that this function ceases at the point where the wire is cut and turned to form a staple, and that below the point where the driver engages the crown of the fastener it is enlarged, and does not perform the function assigned to it in the Eggleston patent. It is therefore contended in behalf of the defendant that, because of this enlargement of the lower portion of the slot of the defendant, its machine does not have the guide of the Eggleston patent with its slot, i.

It is difficult to see what the object of the defendant was in widening the slot at its lower end, since such enlargement appears to fulfill no essential purpose, neither adding to, nor detracting from, the operation of the machine in any way. Indeed, it is quite possible it may have been done for the very purpose of evading this patent. If it be said that the narrow slot is useless to the defendant after the staple is formed and the setting operation begins, it is because at this point the driver straddles and seizes upon the eye of the button, and guides it to the point of insertion in the fabric, precisely as at a certain point in the operation of the Eggleston device the eye of the button is straddled by the slot, P, in the jaw, J, when the narrow slot in the guide becomes useless, and the button is held in place by the slot in the jaw. In neither device, after the driver has straddled the eye of the button, is there a necessity for a slot so narrow as to hold the eye centrally upon the crown of the staple; but it may be widened out, provided it be not widened out so much as to destroy the function of the groove, t, and permit the legs of the staple to escape laterally from the groove. It appeared that in the Elliott machine the slot, i, of the Eggleston patent is made use of so far as such use is of any value to the machine, and we do not think the charge of infringement is avoided by the fact that in the final operation of perforating the fabric and clinching the staple the narrow slot becomes superfluous. The main difficulty arises from the fact that in the Eggleston patent the button starts down the slot or groove with the staple already formed and strung upon it, while in the defendant's device the button starts down the groove alone, stops on its way to receive the wire, and to have this wire formed into a staple, and then to be impelled by a driver so fashioned that the narrow slot becomes unnecessary.

I have experienced some difficulty in the examination of this question by the intricacy of the Elliott mechanism and the absence of a model; but, upon the best consideration I have been able to give to it, it seems to me, though I confess not without some doubt, that the charge of infringement is fairly sustained, and that there should be a decree for the plaintiff. The defendant seems to have availed itself of the Eggleston device so long as it was useful in the structure of its machines, and to have discarded it when it became unnecessary.

SEVERENS, District Judge, (concurring.)   In this case I concur in the opinion of the presiding justice.   To what he has said in regard to the validity of the Eggleston patent I have nothing to add.

Upon the question of infringement there has been in my mind, during the progress of the case, a similar doubt to that expressed in the opinion of Mr. Justice BROWN; but a careful study of the mechanism of the machines of the respective parties has substantially dispelled that doubt, and upon his suggestion I will, as succinctly as possible, state the grounds upon which my conclusion rests.

Certain propositions are clear and undisputed.   The clinching anvil of the defendant's machine is fashioned and operates in the same way as that of the Eggleston patent.   The driver is constructed in the same way, has the same groove and recess, and it executes the same function, and in the same way, as that of the complainant.   The same is true of the grooves in which the staple is fixed, guided, and driven, and all these elements—anvil, driver, and guiding grooves—in combination, acting upon the material employed, operate in the same way, and produce the same result, in both machines.

There remains the feature of the slot in which the shank of the button is held in position; and the question whether that of the defendant is substantially the same, and executes the same function in the defendant's machine, as in the combination of the claim of the Eggleston patent, is the only controverted one in the case.   Now, it is to be observed that the practical purpose of the front slot, i, in that patent, is to hold the button shank perpendicularly to the crown of the staple, with the upper side of the eye centrally located on the crown of the staple, until the driver should engage the latter by the shoulders, and the eye of the button by its recess, and the relation of machinery and material should be so far adjusted and the moving parts sufficiently started on their way to insure the successful completion of the operation according to the intention of the patent.   In the afterpart of the operation the slot is a mere clearance way.   In so far as the use of the slot, i, is concerned, the thickness of the guide, G, in the Eggleston patent is not material, and the lower part of it might be widened indefinitely without any impairment of its functions.   The thickness of the guide is necessary for the proportions of the staple to be driven, but, after the initial movement of the engaged parts takes place, the slot, i, is not necessary for the purpose of guiding.

The defendant's machine is undoubtedly a very successful one, and it demonstrates what I have just said, namely, that the continuance of the slot, i, in uniform width down to the anvil is not at all necessary, and is not a material requirement, and that if, in the afterpart of the movement, a passageway for the shank of the button is afforded, it is enough.   Thus the very feature upon which the defendant undertakes to found its defense is by itself proved to be an immaterial one.   So, also, the defendant's

machine shows the necessity for its due operation of so much of slot, i, as it is found in the Eggleston patent, as is material in the latter.

The patent covers the elements involved in the operation of taking the grip and starting, as well as the subsequent portion of the movement. Indeed, the former is the vital part of it.

It seems plain, therefore, that the defendant uses every essential element of the complainant's combination; that the elements operate in practice in substantially the same way, and produce the same result.