BRESNAHAN et al. v. TRIPP GIANT LEVELLER CO.

(Circuit Court of Appeals, First Circuit.   February 14, 1896.)

No. 162.

1. APPEALS FROM INTERLOCUTORY INJUNCTIONS—PATENT CASES — PRIOR DECISIONS.

Upon appeal from an order granting a temporary injunction against infringement of a patent, the circuit court of appeals is governed by the same general rules as the circuit court, and must, with necessary limitations, put itself in the place of that court.   It must therefore give proper effect to prior adjudications establishing the validity of the patent, or determining its construction.

2. PATENT INFRINGEMENT SUITS—PRELIMINARY INJUNCTION—PRIOR ADJUDICATIONS.

In general, where the validity of a patent has been sustained by a prior adjudication on final hearing, and after bona fide and strenuous contest, the matter of its validity, on motion for preliminary injunction in subsequent cases, is no longer at issue, except where a new defense is interposed, in which case the evidence to support it must be so cogent and persuasive as to convince the court that, if it had been presented in the former case, it would probably have led to a contrary conclusion. Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834, followed.

3. SAME—APPEAL FROM PRELIMINARY INJUNCTION.

Quære, whether the rule in relation to the binding effect of a previous decision, on an application for preliminary injunction, will be applied by the circuit courts of appeals to previous decisions of the circuit courts, or will be limited to adjudications of the circuit courts of appeals. See National Cash-Register Co. v. American Cash-Register Co., 3 C. C. A. 559, 53 Fed. 367.

4. SAME—CONSTRUCTION OF CLAIMS.

It is seldom, if ever, that the words "substantially as described" aid the courts in construing the claims of a patent.   In view of the fact that the statutes require the applicant to give a "written description" of his invention, the words in question are usually implied, if not expressed. They cannot enlarge a patent for a narrow invention, or narrow a claim which is justly broad.

5. SAME—BEATING-OUT MACHINES.

The Cutcheon patent, No. 384,893, for an improvement in machines for beating out the soles of boots and shoes, held for the purposes of this appeal, on the strength of the prior decision of the court of appeals for the First circuit in 8 C. C. A. 475, 60 Fed. 80, to be infringed as to claim 1.

6. SAME—FORM OF ORDER.

Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276, applied as to the form of the order affirming the order below with the qualification therein stated.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill in equity by the Tripp Giant Leveller Company against Morris V. Bresnahan and others for alleged infringement of a patent.   The circuit court made an order granting a preliminary injunction (70 Fed. 982), and the defendants have appealed.

Thomas W. Porter, for appellants.

Causten Browne and Alexander P. Browne, for appellee.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge.    This is an appeal from the order of the circuit court granting a temporary injunction against the infringement of claim 1 of patent No. 384,893, dated June 19, 1888, issued to James C. Cutcheon, as follows:

"A machine for beating out the soles of boots and shoes, provided with two jacks, two molds, and means, substantially as described, having provision for automatically moving one jack in one direction, while the other is being moved in the opposite direction, whereby the sole of the shoe upon one jack will be under pressure while the other jack will be in a convenient position for the removal of the shoe therefrom."

In Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615. 60 Fed. 276, this court suggested that, on an appeal of this class, it probably would not cut down an appellant to the mere question whether the court below had acted within the limits of its discretion. Nevertheless, this court, in the determination of the question of the allowance of a temporary injunction in favor of a patentee, is governed by the same general rules as the circuit court, and must, with necessary limitations, put itself in the place of that court.    This observation applies to the extent of requiring us to give their proper effect to prior adjudications establishing the validity of the patent in suit, or determining its construction.    The force of such adjudications in connection with applications for temporary injunctions in patent causes has been uniformly stated in substantially the same terms, but nowhere better than by the circuit court of appeals for the Seventh circuit in Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834, 836, as follows:

"It may be difficult to formulate a rule that will comprehend all the conditions which could be presented. but we think it safe to say that in general, where the validity of a patent has been sustained by prior adjudication upon final hearing, and after bona fide and strenuous contest, the matter of its validity upon motion for preliminary injunction is no longer at issue, all defense. except that of infringement, being reserved to the final hearing, subject, however, to the single exception that, where a new defense is interposed, the evidence to support it must be so cogent and persuasive as to impress the court with the conviction that, if it had been presented and considered in the former case, it would probably have availed to a contrary conclusion."

Whether this court will apply the rule in favor of decisions of the various circuit courts, or will limit it to adjudications of the appellate courts, as was apparently done by the circuit court of appeals for the Third circuit in National Cash-Register Co. v. American Cash-Register Co., 3 C. C. A. 559, 53 Fed. 367, we need not inquire, as the prior adjudication relied on in this instance was our own.

Prior to the filing of the bill in the case at bar, a suit in equity was brought in the circuit court for the district of Massachusetts, charging infringement of the same patent and the same claim as are in question here.    The claim was sustained.    The opinion of the court was reported in Cutcheon v. Herrick, 52 Fed. 147.    The case involved

an examination of the prior·state of the art and several alleged anticipations, and the court said:

"The result of this brief review of the prior art shows that, previous to the Cutcheon patent, the operation of clearing the last from the die had never been done automatically. The essence of the Cutcheon invention is that it was the first machine in which both the motions of compressing the last and of clearing the last from the die were performed automatically."

The .case came here by appeal from the ustal interlocutory decree for a perpetual injunction and a master, and was here fully argued and carefully considered. It was disposed of by us at the October term, 1893, under the title of Herrick v. Tripp Giant Leveller Co., reported in 8 C. C. A. 475, 60 Fed. 80. The decree below was affirmed, and the following is the whole of our opinion on the topic now in controversy:

"The court below was right in holding that the first and third claims ·of the Cutcheon patent were valid, and were infringed by the machine used by the appellants; that the iron last in the appellants' machine was a mechanical equivalent for the jack of the patent; and that there was no sufficient proof that the mechanism of the third claim was in use by others prior to October 28, 1887, the date of the application for the patent. See the opinion of the court below in Cutcheon v. Herrick, 52 Fed. 147."

These proceedings were laid before us at this hearing, but, if they had not been, we, probably, would have been entitled to take notice of them, as they appear of record in this court. Butler v. Eaton, 141 U. S. 240, 243, 244, 11 Sup. Ct. 985; Aspen Mining & Smelting Co. v. Billings, 150 U. S.'31, 38, 14 Sup. Ct. 4.

The parties are not shown to us to be the same in the two proceedings, nor to be so far in privity that the earlier decree operates as an estoppel; but the circumstances require us to apply the rule we have cited from Electric Manuf'g Co. v. Edison Electric Light Co., ubi supra. And we may add that no case could afford a better practical illustration than this of the wisdom of the indisposition of courts to try anew the merits of patents on the crude and incomplete class of proofs frequently incident to motions for temporary injunctions.

The main defense in this case is that defendants' machine does not infringe the claim in issue. This machine is the same as the infringing machine in Herrick v. Leveller Co., ubi supra, with certain modifications explained by the defendants as follows:

"Complainants' machine comprises two pairs of toggle joints, each pair having an arm extending from the lower half or member of such toggle; a two-throw crank shaft arranged in rear of the plane of the upper and lower pivots of said toggles; a pitman connected with each of said cranks, and connected with said arm extending from said toggles; a treadle, which, when depressed, locks the driving pulley on its shaft to start the machine, by which starting the treadle is locked down so that the machine goes on to the end of the movement, and so when one shoe is put under pressure, and the other released and lowered, the machine then stops, provided the operator has released his foot from the treadle. There is also a table pivoted to the upper end of the upper arm of each of said toggles, and upon said tables are arranged the lasts or jacks. Thus, when complainants' machine is put in operation, the rotation of the crank shaft, acting upon its pitman, bends one toggle joint, and. straightens the other, by which means one shoe is cleared from the mold and the other is brought into contact with the mold; each such movement, when once started, going on automatically till it is completed. The defend-

ants have no crank shaft in rear of their toggle joints, for the simple reason that they have no toggle joints; and for the reason they have no pitmen extending from the throws of the crank to the toggle joints. They have a two-throw crank shaft, on each throw of which is mounted a pitman, and the upper end of each pitman is pivoted to a table which carries a last, said tables being each connected with a block that slides upon an oblique bar, and is so formed that the last table moves up and down in said block. There are also a pair of treadles and an oscillating frame, together with a rock shaft having oppositely extended arms, to which the treadles are respectively connected; and said rock shaft also has an arm that is arranged to be engaged by two trundles on a gear or wheel which alternately actuate it in opposite directions, so that, when the operator depresses the proper treadle, the oscillating frame is thereby depressed, by which the pulley on the driving shaft is locked, the rock shaft is slightly turned, and the machine set in motion, and will make a half revolution, provided the operator constantly holds the treadle depressed; and, when the half revolution of the crank shaft is made, the proper treadle actuates said rock shaft, thereby raising the depressed treadle, thus allowing the oscillating frame to rise, and stopping the machine, whether the operator wills or not. But, as above stated, all through each half revolution of the crank shaft the operator must incessantly hold the treadle depressed or the machine instantly stops. Then the other treadle is depressed, and the operation repeated. At each half revolution of the crank shaft the pitman on the rising crank is carried bodily upward and inward, till the sliding block on the oblique rod has reached a position directly over the crank shaft, and then the pitman is carried straight upward to the full extent of the throw, and till the shoe is under full pressure against its mold. When each pitman is being raised, the inward swinging of the upper end is aided by a roll secured to the pitman above the crank, said roll acting within a cam secured to the frame of the machine; and, when the pitman is being moved downward, the swinging to the front of its upper end is aided by a roll secured to it below the crank, which acts against a cam secured to the frame of the machine."

The circuit court, on granting the injunction order appealed from, found that these modifications did not relieve the character of the machine as infringing. The court defined the changes as follows:

"The differences between the two machines consist mainly in the specific form of connecting mechanism between the crank shaft and the jacks, and in the form of the treadles. In place of the toggle joint and arms connecting the crank shaft with each jack described in the Cutcheon patent, the defendants have substituted a crank and connecting rod." "The specific construction of the treadle is also different in the defendants' machine, though the mode of operation is in substance the same. In the defendants' machine the operator must hold the treadle down until the machine stops; while in the Cutcheon machine the treadle, when depressed, is held down by a catch until the machine is stopped. The difference between the two devices lies in the absence of the catch in the defendants' treadle." "In both devices, when the treadle is depressed, the machine is automatically stopped upon each half revolution of the crank shaft."

We agree with this description of the substance of the changes made in the machine. Our former decision gave such breadth to the claim in issue as to cover the alleged infringing machine in the earlier suit. We are of opinion that the modifications described do not withdraw this case from the scope of that decision. Claim 1 of the patent in suit is a very broad one, and, as we held it valid, it would seem that no method of making the connection between the actuating jacks and the crank shaft, by means well known in the arts at the date of the patent, would evade it. We are also unable to perceive that the discussion in relation to the treadles and their connections are

pertinent, as there is nothing in the letter of claim 1, or in the opinions of either this court or the circuit court in the former case, which makes any automatic stop movement, or any other stop movement, an element. When the circuit court said in the case at bar that the automatic stop movement "is the essential characteristic of the Cutcheon device," it departed from what was decided by us in Herrick v. Leveller Co., ubi supra. There was nothing in that case in either court which called for any elements except those stated in the claim; and these, as explained by the circuit court in the extract we have made from its opinion, cover the first device in which both of the operations of compressing and clearing were performed automatically, and specify no elements except two jacks, two molds, and means for automatically moving one jack in one direction while the other is being moved in another direction. The automatic stop movement is the subject-matter of a later claim or claims.

But the appellants maintain that they now furnish some additional proofs and considerations which enable us, in connection with the words "substantially as described," to limit claim 1. It is rare that these words aid the courts in construing patents, if ever they do. In view of the fact that the statutes require an inventor seeking a patent to give in his application a "written description" of his invention, the words in question are usually implied when not expressed. They cannot enlarge a patent for a narrow invention, and that they cannot narrow a claim justly broad is sufficiently illustrated by Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299. In so far as Robinson on Patents (section 750), and Walker on Patents (3d Ed., § 182), sustain these views, these authors must be regarded as in harmony with the law. Of course, it is theoretically possible that there is something in the state of the art to narrow this claim, which, as interpreted in Herrick v. Leveller Co., ubi supra, is so broad on its face. But unless a new case has been made, differing from that then before us to the extent required by the rule given in Electric Manuf'g Co. v. Edison Electric Light Co., ubi supra, we would not be justified in revising, on an appeal of this character, our conclusions in the earlier suit as to the validity and construction of the claim in issue. The circuit court seems to have found some new facts or considerations in the case at bar which induced it to modify, apparently, its view of the claim; but we are confident that there is nothing in the record so "cogent and persuasive," to use the language of the case cited, as to require us to depart from our earlier decision. We would annul the effect of our own determinations, and encourage interminable litigation, and also, in view of the crude and incomplete records which come up on many appeals of this character, fail to do justice, unless we apply this rule strictly. In this case we also observe that this bill was filed in January, 1895, and, with due diligence on the part of the appellants in asserting their rights under equity rules 66 and 69, it might, apparently, have been long since dismissed or heard finally. As, ordinarily, questions arising under the statutes relating to patents for inventions can best be determined on a final hearing, we ought not to encourage delays in the regular progress of a bill in

equity pending proceedings of the character we are now considering.

In view of the possibility that this case may come to us again on an appeal from a decree after a hearing on bill, answer, and proofs, we do not deem it prudent to express ourselves more in detail than we have.

It is urged that the complainant below is not constructing machines under the patent in issue, or otherwise making use of it; but there is no assignment of error in regard to this proposition, nor is the record in condition to enable us to dispose of it intelligently.

We adopt the form of order used in Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276, 283, already cited, reaffirming the expression which, in the opinion in that case, immediately preceded the order. The order appealed from is affirmed, with costs.