TRIPP GIANT LEVELLER CO. v. BRESNAHAN et al.

(Circuit Court, D. Massachusetts. February 9, 1899.)

No. 321.

1. PATENTS—VALIDITY—EFFECT OF FORMER DECISIONS.
    Where a patent has been declared valid after protracted litigation, it raises a very strong presumption in its favor, and new alleged anticipatory matter must clearly convince the court that the former decisions were wrong. If any doubt exists, the former adjudications should stand.

**2. SAME—ANTICIPATION—MACHINE FOR BEATING OUT SHOE SOLES.**

The Cutcheon patent, No. 384,893, for improvements in machines for beating out the soles of boots and shoes, was not anticipated by either the Collyer patent, No. 178,598, nor by the De Forest patent, No. 270,936, for an improvement in presses for pressing material of a spongy nature, such as cotton or tobacco.

This was a rehearing on supplemental bill filed by defendants. For former opinion, see 61 Fed. 289.

Causten Browne and Alex. P. Browne, for complainant.

Fish, Richardson & Storrow and William Quinby, for defendants.

COLT, Circuit Judge. This is a rehearing of the suit of the Tripp Giant Leveller Company against Bresnahan and others, brought for infringement of the Cutcheon patent, No. 384,893, for improvements in machines for beating out the soles of boots and shoes. On March 15, 1894, after hearing upon pleadings and proofs, this court ordered a decree in favor of the complainant, adjudging the first claim of the patent valid, and infringed by the defendants, and referring the cause to a master for an account of profits and damages. The rehearing is upon the original record and additional proofs brought in by supplemental bill filed January 24, 1898. The ground of the rehearing is the alleged discovery, since the original hearing and decree, of two prior patents,—the Collyer patent, No. 178,598, dated June 13, 1876; and the De Forest patent, No. 270,936, dated January 23, 1883. The supplemental bill prays that the defendants "may be permitted to interpose the said prior patents to Collyer and De Forest in defense of said original suit, as anticipations of the invention of the said Cutcheon patent, and as material to the true construction of the first claim thereof, and to the question of infringement, with the same force and effect as though said Collyer and De Forest patents had been pleaded in their answer to the bill of complaint in said original cause."

The Cutcheon patent has been strenuously contested for the past seven years. The validity of the first claim has been four times sustained by this court,—twice on final hearing, once on motion for preliminary injunction, and once on petition for contempt. It has been twice sustained on appeal by the circuit court of appeals,—in one case on final hearing, and in the other on motion for injunction. 52 Fed. 148; 8 C. C. A. 475, 60 Fed. 80; 61 Fed. 289; 70 Fed. 982; 19 C. C. A. 237, 72 Fed. 920. Where a patent has been declared valid after protracted litigation, it raises a very strong presumption in its favor, and the new alleged anticipatory matter must clearly convince the court that the former decisions were wrong. If any doubt exists on this point, the former adjudications should stand. In Heaton-Peninsular Button-Fastener Co. v. Elliott Button-Fastener Co., 58 Fed. 220, 223, Mr. Justice Brown said:

"Assuming it to be a question of doubt whether the changes made in the McGill patent did involve invention, the fact that the patent has already been sustained in two other cases is sufficient of itself to turn the scale in favor of the patent."

See, also, Vulcanite Co. v. Willis, 1 Flipp. 388, Fed. Cas. No. 5,603; Office Specialty Mfg. Co. v. Winternight & Cornyn Mfg. Co., 67 Fed.

928; Manufacturing Co. v. Spalding, 35 Fed. 67; Paper Co. v. Elsas, 65 Fed. 1001.

The first claim of the Cutcheon patent is as follows:

"(1) A machine for beating out the soles of boots and shoes, provided with two jacks, two molds, and means, substantially as described, having provision for automatically moving one jack in one direction while the other is being moved in the opposite direction, whereby the sole upon one jack will be under pressure while the other jack will be in a convenient position for the removal of the shoe therefrom."

The meaning of this claim to my mind is free from doubt. It seems to me to cover this: In a machine of this type, or a direct pressure machine, the combination of two jacks and two molds, and means, substantially as described, or their known equivalents, for automatically moving one jack in one direction while the other jack is being moved in the opposite direction, whereby the sole of the shoe upon one last will be under pressure while the other jack will be in a convenient position for the removal of the shoe therefrom. The Cutcheon machine is limited to two pressing mechanisms working automatically, in which only one pressing mechanism operates at a time to press. In the art of beating out the soles of shoes, this conception was new with Cutcheon. Any machine which makes use of this simple mechanical movement, namely, the simultaneous motions of pressure and clearance by two pressing members in opposite directions, and employs substantially the same or known equivalent means to accomplish the same result, is an infringement. Any machine which uses a different mechanical movement, or which employs substantially different means, or means which were not known equivalents at the date of the patent, does not infringe. The single section machine of Pray, and the so-called "gang machines," which were old in the art at the date of the Cutcheon invention, are not anticipations.

The circuit court of appeals, in the case of Bresnahan v. Leveller Co., 19 C. C. A. 237, 241, 72 Fed. 920, 923, in affirming the decision of this court, said:

"Claim 1 of the patent in suit is a very broad one, and, as we held it valid, it would seem that no method of making the connection between the actuating jacks and the crank shaft, by means well known in the arts at the date of the patent, would evade it."

The Collyer patent, which is now brought forward as an anticipation of the Cutcheon, is a gang machine. It was for an improvement on a former patent. It describes six sets of beating-out mechanisms arranged in a common frame. The improved device substitutes, for the cam which operated upon the pressing mechanisms successively, another form of cam, which operated upon two or more of the pressing mechanisms simultaneously. The single claim of the patent is as follows:

"The frame and reciprocating jack rods and molds or dies, in combination with a cam adapted to operate the jack rods simultaneously two or more, as the frame and cam change position with relation to each other, substantially as described."

Collyer, in describing how he would beat out two shoes on his machine after the manner of the Cutcheon patent, testifies:

"I would put the first one on the first jack which was out from pressure. I then start the machine, and that passed the shoe under pressure. I then put the second sample shoe on the following last. I then start the machine, and that puts the second shoe under pressure. I then can revolve the machine having two shoes under pressure. When the machine comes to a stop, I take the first shoe from the jack. I start the machine again, and the other shoe comes out from pressure. Then the machine remains as I started it at first."

In the Collyer machine, operated with two shoes, one shoe is first moved into pressure; then the second shoe is moved into pressure, the first shoe still remaining under pressure; then both shoes are moved under pressure; then the first shoe is removed out of pressure; and finally the remaining shoe. In the Cutcheon machine, one shoe is moved from the position of removal to the position of pressure while the other shoe is being moved from the position of pressure to the position of removal; in other words, the first claim of the Cutcheon patent is for a combination of mechanism "for automatically moving one jack in one direction while the other is being moved in the opposite direction." The two machines are different in construction and mode of operation, and therefore Collyer is not an anticipation of Cutcheon. The Collyer machine was old in the art, and presumably known to the trade. The fact that it is not shown to have gone into use while the Cutcheon machine, with its more simple mechanism, has proved commercially successful, tends to show that the two machines are different, and that the Cutcheon machine possesses patentable novelty.

Upon its face, the De Forest patent is closer to Cutcheon than Collyer. It relates to an improvement in presses for pressing materials of a spongy nature, such as cotton and tobacco, and more especially of plug tobacco. The specification says:

"The presses now in use for making plug tobacco consist of a mold in which the loose tobacco leaves are pressed, and the attendant, by means of a lever, causes the plunger to compress the same. It is necessary to hold a newly-pressed plug a short space of time under pressure, for, if relieved immediately after it has the greatest pressure, its spongy nature would cause it to swell, and it would then require more surface of leaf to suitably cover it. This time of the attendant is consequently lost to the manufacturer, and, as within this time another plug could be made, a machine so constructed as to enable the attendant to make use of this time would produce double the quantity. This object is accomplished by my invention; and it consists—First, in the employment of two or more reciprocating molds mounted on one frame, and operated by cams firmly secured to a common shaft in reversed position; second, in the peculiar construction of and devices forming the molds, whereby an automatic movement of the end plate is secured; third, in the means of adjusting the mold to form plugs of various sizes; fourth, in arresting the cams at each half revolution, and also in the peculiar devices by which this is accomplished, for the purpose of discharging and recharging the mold not under pressure, and permitting the material under pressure to attain compactness; and, fifth, in the use in the mold of a removable bottom block, which has a hinge bearing groove for the edge of the front or apron of the mold."

The De Forest patent is for a machine for compressing spongy materials. The Cutcheon patent is for a machine for beating out leather soles. The two arts are not the same. The objects to be accomplished and the materials to be operated upon are different. Beating out means leveling, shaping, or bending to a certain predetermined

shape. Neither compression nor compacting is the main result which is sought. From the nature of the material, it is apparent that you cannot compress sole leather in the sense that you can compress loose fibers or leaves of spongy substances, like cotton or tobacco. The fundamental purpose of the De Forest machine is to compress loose tobacco leaves or like "spongy" material. The fundamental purpose of the Cutcheon machine is to shape and set into proper curvature and form the leather sole of a shoe.

The two machines are different in mode of operation and mechanical construction. In the De Forest machine the material is being pressed from the time the machine starts until it stops; in other words, there is only one motion, namely, motion with pressure. In a beating-out machine, like the Cutcheon, the last carrying the shoe must be moved a substantial distance without pressure; in other words, there are two motions, the motion of clearance and the motion of pressure, and the clearance motion is several times greater than the pressure motion. Both machines have two throw crank shafts, but the Cutcheon machine must be so organized that the jacks and molds will perform the proper clearance motion in addition to the pressure motion. A machine in which the whole of the throw is devoted to the pressure motion, like the De Forest, is all that is needed for compacting spongy material, such as tobacco, but it would be inoperative and useless as a beating-out machine. The De Forest machine is a duplex pressing machine, but it is not a duplex clearing and pressing machine. Whether a pressing machine presses the whole or a part of the time during its operation may, theoretically speaking, seem an unimportant matter; but to take from another art a De Forest machine for pressing spongy substances, where the pressure motion is continuous, and reorganize it into a practical and useful beating-out machine, with its motions of clearance and pressure, is quite another question. It is not denied that the actuating mechanism of the De Forest and Cutcheon machines is different. With the Cutcheon machine before us, it may seem easy to produce it by reorganizing De Forest, and borrowing from Pray; but this does not prove anticipation by De Forest, or lack of invention in the Cutcheon patent. In the beating-out art, Cutcheon was the first to produce an automatic direct pressure duplex machine. The sale of beating-out machines to-day is practically limited to the Cutcheon machine. It is fast supplanting the use of the old single section and gang machines.

In devising his machine, Cutcheon not only employed the lasts and molds for beating out shoes (which were old) in place of the plungers and molds of De Forest, but, in addition, he combined his lasts and molds with his two-throw crank-shaft in a different manner and for a different purpose than the plungers and molds were combined by De Forest with his two-throw crank-shaft. We are not prepared to say that this did not constitute invention. Nor are we prepared to hold that De Forest makes the first claim of the Cutcheon patent void, or narrows the construction already given to it by this court and the court of appeals. But, however this may be, we are at least satisfied that the new evidence introduced by the defendants in support of their supplemental bill is not of such a clear and convincing character

that, under the rule prevailing in cases like the present, it should in-. duce the court to reverse or modify its former decisions. The interlocutory decree of March 19, 1894, stands confirmed. Decree confirmed.