BRESNAHAN et al. v. TRIPP GIANT LEVELLER CO.

(Circuit Court of Appeals, First Circuit. January 10, 1900.)

No. 293.

1. PATENTS—SUIT FOR INFRINGEMENT—ESTOPPEL—EFFECT OF PRIOR DECISIONS.

The fact that defendants in a suit for infringement of a patent, who have been granted a rehearing on the ground of newly-discovered evidence affecting the validity of the patent, were also parties or privies to other litigation in the same jurisdiction involving the same patent, which pending such suit passed to final decree sustaining the validity of the patent, does not estop them from contesting any of the issues opened by the rehearing, although the questions involved are subject to such fair and reasonable influence as may legally result, on grounds other than strict estoppel, from the prior adjudication; and, to warrant the overturning of such decision, the newly-discovered evidence presented must fully, clearly, and unmistakably establish, in connection with the other evidence in the case, that the prior decision was wrong.

**2. SAME—ANTICIPATION—MACHINE FOR BEATING OUT SHOE SOLES.**

> The Cutcheon patent, No. 384,893, for improvements in machines for beating out the soles of boots and shoes, was not anticipated by either the Collyer patent, No. 178,598, nor by the De Forest patent, No. 270,936, for an improvement in presses for pressing material of a spongy nature, such as cotton or tobacco.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Frederick P. Fish and William Quinby, for appellants.

Causten Browne and Alexander Browne, for appellee.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

ALDRICH, District Judge. The litigation involving the validity and scope of the Cutcheon patent has been protracted over a period of eight years. Questions in respect to its validity and scope, in different aspects, have been several times before the circuit court, and twice before the circuit court of appeals for the First circuit, wherein its patentability and its utility have been repeatedly sustained and explained. It is now strenuously urged by counsel for the Cutcheon interests that from the beginning the relations of the present appellants to the litigation involving the Cutcheon invention have been such, as parties or privies, as to estop them from further litigation in respect to all questions heretofore settled in this circuit in the various cases involving the Cutcheon device. The evidence before us tends strongly to show that the appellants were privy in fact to the various proceedings involved in this litigation; but if we were to assume that the present appellants were parties in a part of the prior litigation, and that they conducted, controlled, and paid the expenses of that in which they were not parties of record, we could not, in the present aspect of this case, accept such conditions as operating as a strict estoppel, for the reason that the final decree in the earlier litigation was entered after this proceeding was instituted, and is not so pleaded as to strictly and legally present the question of estoppel. Moreover, the petition of Hayes and Bresnahan, filed in this cause January 2, 1897, for leave to file a supplemental bill, concludes with the prayer that, upon the coming in of the proofs under the supplemental bill, they may be awarded a hearing of the original cause. On January 22d of the same year the circuit court, exercising the discretion which resides alone with such court, granted leave in general terms, and without limitation. Such order unquestionably entitles the appellants to a consideration de novo of all the questions at issue in this cause. Such questions, however, are subject to such fair and reasonable influence as may legally result, on grounds other than strict estoppel, from the prior determinations and adjudications upon similar facts in respect to the Cutcheon patent.

The petition for a rehearing on supplemental bill was grounded upon newly-discovered evidence involved in a prior patent issued to one Collyer, and another to one De Forest, which it is claimed are anticipations of the Cutcheon patent, or, if not to be accepted as such, at least serve to limit the first claim thereof. The petition was

filed, as has been said, on January 2, 1897, and, of course, subsequent to the adjudications in Cutcheon v. Herrick (C. C.; decided in 1892) 52 Fed. 147, approved by the court of appeals in Herrick v. Leveller Co., 8 C. C. A. 475, 60 Fed. 80; subsequent to the adjudications in Leveller Co. v. Rogers, heard with other cases, to one of which the present appellants were parties (C. C.; 61 Fed. 289); and subsequent to the adjudications in Leveller Co. v. Bresnahan (decided by the circuit court in 1895) 70 Fed. 982, as approved and explained by the court of appeals upon Bresnahan's appeal, reported in 19 C. C. A. 237, 72 Fed. 920. While the prior litigation and these adjudications, for the reasons already stated, do not operate strictly as an estoppel, they do serve to forcibly confront us with considerations of stare decisis, considerations of public policy, considerations of laches, and considerations of the rule that the newly-discovered evidence, to entitle a party to a rehearing and a reversal of prior adjudications, must disclose clear and unmistakable anticipations of a patent which has been sustained on final hearing on the ground that it involved invention.

The rule of stare decisis is a salutary one, at least to the extent that a court should with reasonable stability adhere to its solemnly declared and authoritatively published decisions in respect to similar situations, and upon questions depending upon similar facts which relate to general interests, as well as to private and particular interests, and in respect to which the public, in a measure, is supposed to adjust itself and its business affairs; and even upon the view which we take, that the prior litigation is not, strictly speaking, an estoppel upon the defendant in respect to the questions now presented, the public view is one which we are bound to consider upon the question whether all that has been decided by the various courts, and all the business interests and conditions which have been established throughout the country in reliance thereon, should be unsettled and overthrown upon the ground of newly-discovered evidence, of a recorded and public character, like that of a patent, introduced into this proceeding nearly six years after the validity of the Cutcheon patent was put in issue in the Herrick Case, in which there was a final hearing in the circuit court, and an opinion reported in 52 Fed. 147; a hearing on appeal, reported in 8 C. C. A. 475, 60 Fed. 80; a hearing on a motion for a rehearing, which was denied, in the same case, November 16, 1893,—and nearly five years after the validity and scope of the patent were put in issue in a proceeding to which the present appellants were parties of record, and in relation to which there had been numerous hearings, including a hearing upon motion for preliminary injunction; another upon motion for contempt; a final hearing resulting in an opinion of the circuit court, reported in 61 Fed. 289; a hearing upon motion for preliminary injunction, resulting in the opinion of the circuit court published in 70 Fed. 982; and a hearing on appeal, wherein the decree of the circuit court was affirmed. 19 C. C. A. 237, 72 Fed. 920. Public policy requires that decisions which involve general law, and the determination of facts such as those involved in a patent which may concern the general public, should be adhered to, unless it shall subsequently be made

clearly to appear that the decision and the findings were erroneous, when, it goes without saying, the decision should be corrected. The reasons which are so often given for holding that the judgment estops, not only as to every ground of recovery or defense actually presented, but also as to every ground which might have been presented (Southern Pac. R. Co. v. U. S., 168 U. S. 1, 50, 18 Sup. Ct. 18, 42 L. Ed. 355; Columb v. Manufacturing Co., 50 U. S. App. 264, 267, 28 C. C. A. 225, 84 Fed. 592), are cogent reasons to be considered upon the question of reversing a long line of judicial decision upon a rehearing grounded upon newly-discovered evidence. To allow a party to come into court again and again after decision, with newly-discovered evidence, which, as said in Southern Pac. R. Co. v. U. S., 168 U. S., at page 65, 18 Sup. Ct. 18, 2 L. Ed. 355, is simply cumulative, except in cases where the newly-discovered evidence is clear and vital, and the party is absolutely free from laches, would offend the doctrine so forcibly stated by Mr. Justice Field in Stark v. Starr, 94 U. S. 477, 485, 24 L. Ed. 276, 278, where it is said:

"It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by the pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit if the first fail. There would be no end to litigation if such a practice were permissible."

Under the constitution and the laws, every party is entitled to a full and fair trial, and this means that every party holds his property and his interests subject to the results fairly and reasonably reached by the constituted authorities under the limitations upon humanity. The theory of the judicial system is to give a party a reasonable day in court, and a trial as full, fair, and impartial as the lot of humanity will permit; but this theory does not contemplate that litigation shall be so interminable that private rights shall be practically incapable of vindication.

While the views which we have expressed in respect to stare decisis, public policy, and laches do not operate strictly as an estoppel under the circumstances of this case, such considerations have operated to create and sustain the rule which requires that the newly-discovered evidence, in order to be controlling, shall fully, clearly, and unmistakably establish, in connection with the other evidence in the case, that the former decisions between the same parties were wrong. In the present case, at an earlier stage (19 C. C. A. 237, 72 Fed. 920), on appeal from an earlier decree than the one based upon the newly-discovered evidence which we are now considering, the appellants then maintained that they furnished proofs in addition (not the present newly-discovered evidence) to the proofs adduced in the original case; and the full force of the rule as to the effect of prior determinations and adjudications in patent cases was there recognized by the court of appeals, which, in referring to the rule that subsequent discoveries should not narrow the claim as interpreted in Herrick v. Leveller Co., supra, unless the newly-discovered evidence made a new case, said at page 924, 72 Fed., and at page 242, 19 C. C. A., "We would annul

the effect of our own determinations, and encourage interminable litigation, * * * unless we apply this rule strictly." This is not a question as to the effect of prior decisions upon the same patent in another jurisdiction, but a question whether the newly-discovered evidence introduced under the supplemental bill on the rehearing is sufficient to warrant overturning prior decisions and determinations in our own circuit in respect to the same device; and this question, presented as a mixed question of law and fact, must be determined upon the evidence,—the old and the new,—and upon the circumstances of this particular case. The decisions (and there are many) all go at least to the extent of saying that the new evidence, to warrant it, must be so cogent and persuasive as to impress the court with the conviction that, if it had been presented and considered on the original hearing, it would have clearly produced a contrary conclusion from the one there reached. There are some cases where it is held that, if the claim is made that newly-discovered evidence or patents anticipate the patent previously sustained upon bona fide and strenuous contest, the anticipation must be described in full, clear, and exact terms. We do not consider it necessary to resort to this extreme rule, but are disposed to consider whether the situation now presented, which involves the prior determinations and adjudications, together with the old and the new evidence, presents a case which fairly calls for a result different from that heretofore reached in the circuit court and in the circuit court of appeals. The question of fact in patent causes is, in the first instance, of course, presented to the circuit court for its determination. The validity and scope of the Cutcheon patent had been frequently passed upon by the circuit court prior to January 22, 1897, when, through the medium of the supplemental bill, the De Forest and Collyer patents were introduced. We have no occasion to deal here with the question as to what would have been the probable effect of the newly-discovered evidence upon the hearing in the circuit court, which was necessarily involved in the consideration of the motion for a rehearing in that court; and, moreover, the question of the probable effect of the newly-discovered evidence upon the tribunal charged in the first instance with the determination of the facts is not now problematical, for the reason that after the motion for rehearing was granted, and the case reheard in the light of the newly-discovered evidence, and after patient consideration, the earlier decree in that court was affirmed, with an exhaustive opinion, which deals fully with the force of the evidence involved in the De Forest and Collyer patents. It would not be useful, and we do not feel called upon, to review or explain what has been said in the published opinions of the circuit court and the circuit court of appeals in the various stages of the prior litigation with respect to the validity and scope of the Cutcheon patent, or the breadth and scope of claim 1 of that patent. The present situation only requires that we should consider the newly-discovered evidence on which the appellants rely in connection with the other evidence in the case, and determine whether there is anything in the case as presented now which calls for a modification or reversal of the adjudications involved in the decree of the circuit court which was opened by

the order permitting the supplemental bill and the new evidence to be filed, and which was afterwards, upon rehearing and consideration, affirmed by that court.

As has been already said, the newly-discovered evidence on which the appellants relied was the Collyer patent, No. 178,598, dated June 13, 1876, for improvements in machines for the manufacture of boots and shoes, and the De Forest patent, No. 270,936, dated January 23, 1883, for improvements in presses, both of which were granted prior to the date of the Cutcheon invention. The opinion of Judge Colt on rehearing in this case (92 Fed. 391) presents an exceedingly careful analysis of the mechanism involved in the newly-discovered evidence, and its application, so far as it may be applied, to the mechanism involved in the Cutcheon invention. We might fairly and reasonably enough leave the weight and effect of the newly-discovered evidence involved in both patents upon the analysis accorded to it in the circuit court; for it seems to us that, in view of the whole situation, which includes, of course, the prior determinations and adjudications in respect to the Cutcheon patent, the circuit court was clearly right in treating the newly-discovered evidence as quite insufficient to change the results theretofore reached. Judge Colt, in his opinion on rehearing, significantly points out that the De Forest patent was borrowed from a different art; but let us, for a moment, look at this patent, not in the light of extremely refined and scientific conception and reasoning, but rather upon the practical view which, in a sense, at least, should govern a practical question relating to a practical machine to be used by practical men in the practical affairs of life. This patent, in general terms, presents a description of a device for improvements in presses; and, in the description, it is clearly and distinctly stated that "the invention relates to that class of presses which are designed and used for pressing materials of a spongy nature, such as cotton, tobacco, etc., but more especially for pressing and molding plug tobacco." Following this is a particular description as to how the plugs shall be formed and molded under pressure, and it will thus be seen that its chief and leading idea is its intended application to the tobacco industry, wherein it is intended to press the light and leafy tobacco substance into solid plugs of marketable shapes and forms. From beginning to end, the word "shoe" (in the sense of a leather shoe) or "leather" or "sole" does not appear in the description or the claims of the patent; and no line or word suggests in the remotest way the idea that the inventor intended it should be used, or that the inventor thought it capable of being used, in the shoe industry, or to fit leather to the form and shape of the human foot. If the fact (which is disputed) were conceded that ingenious and skillful experts may discover in its mechanism a latent and undisclosed capacity, rendering it susceptible of being transformed into a machine capable of beating out leather and shaping it to the foot, and thereby doing something that the inventor never dreamed it could do, it would not present an anticipation so clear and unequivocal as to warrant the court in disturbing its prior adjudications, made upon full and fair hearing, and upon consideration of prior submitted evidence and arguments. Such a disturbance of judicial decision

can only be justified by clear, unmistakable, and substantial proofs, where the party asking relief on the ground that the proofs are newly discovered is free from color of laches, and where it is clear that substantial rights have been violated. But, aside from this general view of the evidence which separates the two patents by a broad valley, the circuit court forcibly and particularly differentiates the two in respect to mode of operation and mechanical construction. We are quite content to leave the technical description of the merits of the De Forest patent, as applicable to the patent in suit, where the circuit court leaves it. Contrary to the view of the circuit court, we think the Collyer patent somewhat nearer to the one in suit than the De Forest patent, for it does relate to the same general art; but, as has been said with respect to the De Forest patent, it is impossible to find in the claims or the description a machine or device, described in clear and unmistakable terms, for doing the particular work of the Cutcheon machine in its particular way, or that it possessed mechanism for automatically moving one jack in one direction while the other is being moved in the opposite direction, in such order that the shoe on the one to which pressure has been applied may be removed while the other is being placed in position to move into pressure. We do not view this case as one involving a question whether the evidence was sufficient to have produced a different result if introduced on the original hearing; neither are we in a position to adopt the well-established rule that rehearings will not be granted upon the ground of newly-discovered evidence where the newly-discovered evidence is cumulative in its nature. Such questions are involved on consideration of a motion for rehearing. But in this case, the motion for rehearing having been granted, the question now is whether it is clear, in view of the new evidence and the old, and in view of the fair and reasonable presumptions arising from prior determinations and adjudications, that a different result should now be reached. On the whole, we do not feel warranted in holding that the newly-discovered evidence introduced upon rehearing under the supplemental bill, considered with the other evidence in the case, is sufficient, in respect to being clear and unmistakable anticipations of the Cutcheon invention, as to change the result of the litigation previously announced. The decree of the circuit court of February 23, 1899, confirming its earlier decree of March 19, 1894, is affirmed, with costs.