## PARKER v. AUTOMATIC MACH. CO.

(District Court, N. D. California, Second Division.   July 19, 1915.)

No. 15632.

1. PATENTS ⚬⇒328—VALIDITY AND INFRINGEMENT—BOX-MAKING MACHINE.

    The Parker patent, No. 980,431, for a box-making machine, especially adapted to the making of boxes or crates for oranges, was not anticipated, discloses patentable invention and marks a distinct advance in the art of great value; the machine being automatic in operation after the parts of the boxes are fed into it, and capable of turning out 450 completed boxes per hour, as against 80 by the manually operated machines of the prior art.   Also *held* infringed.

2. PATENTS ⚬⇒243—INFRINGEMENT—UNITING TWO ELEMENTS OF COMBINATION IN ONE.

    The joinder of two elements of a patented combination into one integral part, which accomplishes the purpose of both without changing the principle of operation of the combination, does not avoid infringement.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 382–384; Dec. Dig. ⚬⇒243.]

3. PATENTS ⚬⇒241—INFRINGEMENT—MACHINES.

    A machine which is constructed on the same principle as that of a patent, and which has the same mode of operation, and accomplishes the same result, by the same or equivalent mechanical means, infringes the patent.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 380; Dec. Dig. ⚬⇒241.]

In Equity.   Suit by George D. Parker against the Automatic Machine Company.   On final hearing.   Decree for complainant.

Nicholas A. Acker, of San Francisco, Cal., for plaintiff.
Frederick S. Lyon, of Los Angeles, Cal., for defendant.

VAN FLEET, District Judge.   Suit for infringement of letters patent No. 980,431, granted plaintiff for a box-making apparatus. While the patent by its terms covers machines for the manufacture of boxes generally, the particular device of the patent is designed and adapted to the making of the character of wooden boxes or crates commonly in use for the marketing and shipment of oranges.   The device is distinctly automatic, in contradistinction to the older hand-operated machines of the art, and the evidence shows that it is the first successfully operating device of its kind to be produced, the value of which in the art may be best appreciated from the fact that, while with the older or hand-operated machines the output is about 80 boxes per hour, by the device of the patent they are manufactured at a rate approximating 450 per hour.

[1] Of the 40 claims of the patent, 17 of them—2, 3, 4, 6, 8, 9, 10, 11, 19, 20, 31, 34, 35, 37, 38, 39, and 40—are alleged to be infringed. As to all of these but claim 2, while denying their infringement, it was conceded by defendant at the argument that they are valid and unanticipated.   As to claim 2 it is alleged to be invalid by reason of anticipation; but it is admitted that, if valid, defendant's device in-

fringes it. These admissions relieve the court of any necessity of considering the claims in connection with the prior art, excepting only as to claim 2, and as to that claim an examination of the evidence satisfies me that defendant's contention that it is anticipated is not well founded.

This leaves as the only question to be determined whether there is to be found in the offending device the combinative elements of the patent; and this, I think, may be ascertained from a more or less general comparison of the construction and operation of the two devices involved, as in my judgment, based not only upon the evidence in the record, but upon the results of a personal inspection and observation by the court of the two machines in actual operation, the results of which it was stipulated might be regarded as a part of the evidence, the question of infringement turns upon a consideration of two or three cardinal points as to which defendant claims that his device differs so essentially in principle and mode of operation from that of plaintiff as to avoid infringement—the plaintiff, on the other hand, claiming that these differences are but the result of mechanical changes by substituting elements of an equivalent nature, involving no characteristic variation in operation or principle.

Avoiding technical designations and details, the general construction of the plaintiff's device may be briefly, and I think sufficiently for present purposes, described thus: It is composed of a series of interrelated parts or mechanisms co-ordinating and working together in combination, consisting, first, of suitable hoppers for receiving the prepared material for the composition of the boxes, designated in the trade as "shook," with means for feeding this material to the constructive parts of the machine and carrying and assembling it on the nailing position; second, nailing mechanism, for nailing the parts together when so assembled; third, means for rotating or turning the partly completed box to present its successive sides or faces to the nailing mechanism for the receipt and nailing of the side pieces or slats; and, fourth, means for ejecting the completed box from the machine.

Its operation may be best described with reference to the particular character of box or crate it is designed to produce—a box having square ends and partition piece, dividing it into two compartments, with bottom, sides, and top composed of thin slats or boards, two on each face, so spaced as to admit of free circulation of air to the contents when packed. The different parts of the sawed material, or "shook," are placed in suitable hoppers provided at the rear of the machine; the end and partition pieces standing upright, or on edge, and the slats or side pieces piled in a transverse hopper or chute arranged above the position of the former. The end and partition pieces are then fed mechanically, one set at a time, edgewise into the machine, carried to proper position upon the nailing bases, and there held between rotating clamps or disks. These are followed by two side pieces, likewise fed mechanically and moved into proper register or position on the upper edges of the end and partition pieces, and are thereupon nailed thereto by the action of the nailing mechanism. The parts thus connected are then given a quarter turn, or rotation of 90

degrees, by the action of the rotating clamps, so as to present to the nailing mechanism the next succeeding face or side, to which a second set of side pieces are carried and nailed, when the structure is again given a quarter turn to present a third face, and a third set of side-pieces added in like manner. The box, being thus completed except as to the cover or top pieces (which are added by hand after packing), is then ejected from the machine. The entire operation, other than placing the material in the hoppers, is automatic, and repeated indefinitely or until the material is exhausted. It is a highly ingenious combination, working successfully, and, as indicated, the conception is a distinct advance in the art of great value.

The alleged infringing device of the defendant, of later production, is likewise an automatic box-making machine, but designed and adapted for the manufacture of lemon crates or boxes—a crate constructed in all material respects like an orange box, excepting as to shape; it having oblong or rectangular ends and partition piece, which give it a height greater than its width. The device is unpatented, but is being manufactured and sold by defendant in the same citrus districts of the state in which plaintiff's device finds a market. In a general way it is the counterpart of the plaintiff's device. It has the same co-ordination of working elements or combination of co-operative mechanisms—that is, hoppers and feeding means, nailing mechanism, holding clamps with means for rotation, and means for ejecting the completed structure—and there seems to be no question made as to the two machines performing the same succession of operations, in substantially the same general way, and with like results. While, as stated, the defendant's device, as thus far produced, is specially adapted to the making of lemon boxes, the evidence shows that by slight mechanical changes it could be readily adapted to the making of orange boxes or boxes of other forms. The differences in character and construction claimed by defendant as distinguishing its device from that of plaintiff and avoiding infringement are principally these: First, the principle on which the feeding mechanism works (a) as to the means by which the ends and partition pieces are carried from the hoppers and assembled on the nailing position, and (b) as to the manner in which the positioning of the side slats for nailing is accomplished; second, the rotating mechanism, by which the box is turned during the process of construction; and, third, the means for ejecting the completed box from the machine. These claimed distinguishing features will be noticed in their order.

1. In the device of the patent, the end and partition pieces are carried in their upright position, edgewise, into the machine and below the position of the nailing bases, onto a lift or elevator, the latter then raising them to their position on the nailing bases, the elevator thus forming an element in the feeding mechanism. In the defendant's device, this elevator feature is eliminated; the end and partition pieces being fed into position by a direct lateral movement from the hoppers onto the nailing bases, which are in the same horizontal plane. It is claimed that this difference in form "totally changes the co-operative principle of action of the mechanism and the mode of operation of

the machine, and permits it to utilize radically different inter-relations of the other mechanisms," which it is then sought to point out. It is quite true that this change brings the necessity of some minor changes in other respects in the inter-relation of other parts of defendant's device; but I am wholly unable to perceive that it effects any difference in principle in the co-operative action of defendant's machine which can be held to distinguish it in any substantive way from plaintiff's.

Defendant's contention is, in fact, that the so-called "elevator" feature of plaintiff's device is its "life-giving principle," and is so essential to the successful operation of the entire combination of correlated parts that without it the machine is not workable, and that consequently "there can be no infringement of the Parker patent by any machine which does not employ the same principle of action, to wit, the elevator principle." In this I am unable to accept defendant's view, but am satisfied that he greatly magnifies the functional value of that element in its relation to the other features of the combination. As I regard it, this feature of the feed mechanism of plaintiff's device is in no wise essential to its life; nor do the terms of the patent make it so. Any other means of an equivalent nature may be substituted for it and still be within the patent; and from my observation of the operation of the two machines, in the light of the evidence, I am quite satisfied that the substitute means employed in defendant's device is no more than such a change as might readily have been suggested to the mind of any mechanic skilled in the art, with plaintiff's device before him, and that it in no material way effects a change in the principle or mode of operation found in plaintiff's combination.

[2] While changing its form, all defendant has accomplished in substance and effect is the consolidation of two elements of the feeding mechanism into one, but without changing the principle upon which the combinative mechanisms operate. This does not avoid infringement. As stated by the Court of Appeals in the recent case of Dundon v. Pedersen, 220 Fed. 309, 311:

"Neither the joinder of two elements of a patented combination into one integral part, accomplishing the purpose of both, nor the separation of one integral part into two, which together accomplish substantially what was done by the single element, will avoid a charge of infringement. Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375; Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162, 51 C. C. A. 109; H. F. Brammer Mfg. Co. v. Witte Hardware Co., 159 Fed. 726, 728, 86 C. C. A. 202."

[3] It is the idea of means, and not of form, which is determinative of identity of principle. Thus it is said in Lourie Co. v. Lenhart, 130 Fed. 122, 64 C. C. A. 456:

"A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another, by the same means, or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other."

And this is so even if the change work an improvement. Thus in Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 866, 48 C. C. A. 72, it is said:

"The court will look through the disguises, however ingenious, to see whether the inventive idea of the original patentee has been appropriated, and whether the defendants' device contains the material features of the patent in suit, and will declare infringement, even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement."

See, also, Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

As to the minor changes in this part of the feeding mechanism, necessitated by the elimination of the elevator feature, they need not be noticed in detail. It is obvious, I think, from the most casual observation, that they are purely mechanical, involving no change in principle, and are sufficiently covered by what has been said.

2. In the plaintiff's device the side slats are fed into the machine through the action of carrier arms moving horizontally, and which, by the action of engaging clamps, draw the slats into proper position relative to and immediately above the uppermost edges of the end and partition pieces as they rest on the nailing bases, and thereupon the descending nailing heads or chucks contact with and press the arms down sufficiently to deposit the slats upon the ends and partition pieces in final position for nailing. In the defendant's machine, while like reciprocating carrier arms are employed, the slats are deposited in position upon the end and partition pieces by means of what defendant characterizes as "gravity"—that is, without the exertion of pressure from the descending nailing heads—and it is claimed that this difference involves an essential change in the principle of operation of this feature of defendant's device. But an observation of the working of the two machines clearly discloses, I think, that the change is not a material one. While the engaging mechanism for seizing and holding the slats in the process of carrying and depositing them in position differs in minor details, these differences involve no characteristic or essential change in the principle of operation. Through the means employed in defendant's device the slats are no more, in any true sense, deposited by "gravity" than they are by that of the plaintiff. In both the process is essentially and purely mechanical, and the slightly differing means devised by the defendant is very patently the mechanical equivalent of that found in plaintiff's combination.

3. As stated in describing the two machines, both have rotating means for inverting or turning the partially completed box to present the successive faces for receipt and nailing of the slats. The boxes in the one instance being square, and in the other rectangular, it is obvious that to have rotation in either case there must be means provided for clearance of the corners or angles from the adjacent parts of the machine in order that the box may turn. In plaintiff's device, this space is provided by the upward movement of the nailing heads after the process of nailing each set of side pieces is accomplished, thus enabling the arms carrying the revolvable disks or clamps holding the box to rise sufficiently from the nailing bases to give the necessary clearing space for the rotating mechanism to act. In the defendant's device, this space is provided by a rearrangement of the mechanism, which permits the nailing bases to drop sufficiently to af-

ford the necessary clearance for the rotation of the box; this arrangement performing the same office, but in a manner which it is urgently claimed by defendant involves an essentially different principle of operation—the argument being that "it would be impossible in the complainant's machine to utilize the principle of action or mode of operation utilized in this respect by defendant"; that this is due to the organization of the plaintiff's machine, so as "to utilize the elevator"; and that "it would require the total elimination of the elevator and the complete reorganization of the machine to permit the use of defendant's principle of turning the box."

But I am unable to regard this change as involving any essential difference in the principle of operation of defendant's device. It appears to me that what defendant has done in this respect is merely to take the vertically moving elevator feature of plaintiff's feeding mechanism, which he regards as so essential to its life, and adapt it to the rotating means of his device, thus changing its form, but not its substance. I agree with plaintiff that it is not material to the operative principle upon which the two devices work in this regard whether you raise the holding clamps or lower the nailing base. It is a mere choice of mechanical means for accomplishing the same end; that is, providing the space to enable the rotating mechanism to operate. As plaintiff says:

"One is the full mechanical equivalent of the other, performing the same function, and being designed by its manufacturer for the carrying out of the same purpose."

4. There is no substantial merit in the claim that there is any essential difference in the ejecting means employed in the two machines, and they do not call for technical differentiation. In plaintiff's device there is employed appropriate reciprocating means for mechanically ejecting or "kicking out" the completed box. In that of defendant there is likewise employed reciprocating means for this purpose, with the difference that in the latter the incoming end and partition pieces for the succeeding box are utilized as a part of the ejecting means to push out the completed box, whereas in plaintiff's apparatus the mechanism is independent of any such aid. But it is quite obvious to the most casual observation that the one is as much a mechanical means as the other and involves no difference in principle of operation.

There are other differences in the form of construction of the two machines urged upon the attention of the court, but they do not require special notice. None of them are of a character to take them out of the principles above stated or avoid infringement. They are such changes as would readily be suggested to the mind of one seeking to avoid infringement of an existing known conception, and it is not surprising, therefore, to find in the record evidence that prior to the bringing forth of defendant's machine its designer had full opportunity to become acquainted with the construction and operation of the device of the patent.

These considerations lead to the conclusion that defendant's device must be held to infringe the several claims counted upon, since I think it clear that each is capable of being read upon that combination. All

that defendant has done is to seize upon the inventive idea involved in plaintiff's combination and put it forth in changed form, but in no respect changing its principle of operation.

A decree will accordingly be entered in favor of plaintiff as prayed.