## FRICK CO. v. LINDSAY et ux.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1928.

No. 2686.

1. Patents ⚙328—Reissue patent No. 15,895, on air-agitating tube for refrigerating systems, held valid and infringed by device manufactured under patents Nos. 1,567,523 and 1,606,087.

Reissue patent No. 15,895, on air-agitating tube for refrigerating systems, *held* valid and infringed by devise manufactured under patents Nos. 1,567,523 and 1,606,087.

2. Patents ⚙45—Change and acceptance, and utility thereof, are evidence of patentable novelty.

The law regards a change as evidence of patentable novelty, and acceptance and utility thereof as further evidence, even as demonstration.

3. Patents ⚙32—Doubt whether device, which fills recognized need and is extensively used, constitutes invention, or mere mechanical improvement, should be resolved in favor of validity of patent.

Any doubt as to whether patented device should be treated as invention, or mere mechanical improvement, should be resolved in favor of validity of patent, where it fills a recognized need in industry and comes immediately into extensive use.

4. Patents ⚙129(2)—Assignor of patent is estopped to contest its validity as against assignee.

The assignor of a patent is estopped to contest its validity as against the assignee.

5. Patents ⚙129(2)—Wife, engaged in manufacture of infringing device as partner of husband, assigning patent, is equally estopped to contest its validity as against assignee.

Wife, engaged with husband as partner in manufacture and sale of device alleged to infringe patent assigned by husband, was doing business in such association and privity with husband as to be equally bound by estoppel to contest validity of patent as against assignee.

6. Patents ⚙236(1)—Device performing substantially same function in substantially same way to obtain same result as patented device is substantially same, though different in form.

Alleged infringing device is substantially the same as patented device, if it performs substantially the same function in substantially the same way to obtain the same result, though different in shape or form, unless form is of essence of invention.

7. Patents ⚙245(1)—Any patent has some range of equivalents, unless form is indispensable, especially where infringer takes whole gist of invention.

While range of equivalents depends on extent and nature of invention, and narrower range will be applied where patent is for mere improvement, any patent has some range of equivalents, unless form is made the indispensable thing, especially where infringer takes whole gist of invention.

8. Patents ⚙202(1)—As between assignor and assignee, patent, though for mere improvement, must be construed liberally enough to give full value thereto, and exclude assignor from every structure within fair meaning of claim.

As between assignor and assignee of patent, though for mere improvement, construction of patent must be broad and liberal enough to give full value thereto, and, shut out assignor from every structure within fair meaning of claim.

9. Patents ⚙312(1)—No presumption that device, containing material features of patent, does not infringe, arises from fact that patent covering device was issued to alleged infringer.

No presumption that device does not infringe patent arises from fact that patent covering such device was issued to alleged infringer, as court will declare infringement, if original patentee's inventive idea has been appropriated and alleged infringing device contains material features of patent, though supplemented and modified to such extent as to entitle infringer to patent for improvement.

10. Patents ⚙138(2)—Reissue patent, obtained without unreasonable delay, held not void because manufacture of infringing device was begun before grant of patent.

Reissue patent *held* not void, because alleged infringers had begun manufacturing their device before grant of such patent, where it was obtained without unreasonable delay.

11. Patents ⚙129(1)—One joining in application for reissue patent is estopped to assert invalidity thereof, because obtained after he began manufacturing infringing device.

One joining in application for a reissue patent is estopped to assert that such patent is void, because issued after he began manufacturing alleged infringing device.

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Suit by the Frick Company, a corporation of Pennsylvania, against Robert F. Lindsay and wife, trading as the Lindsay Manufacturing Company, and Robert F. Lindsay individually. From a decree of dismissal, complainant appeals. Reversed and remanded.

Charles Neave, of New York City, and Ernest W. Bradford, of Washington, D. C. (Stephen Nettles, of Greenville, S. C., on the brief), for appellant.

James T. Newton, of Washington, D. C. (Siggers & Adams, of Washington, D. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

PARKER, Circuit Judge. This suit was instituted in the court below to restrain defendants from alleged infringement of reissue patent No. 15,895, covering an air-agitating tube for refrigerating systems, and for an accounting of profits derived from the infringement. The court held that the patent was not infringed, and entered a decree dismissing the bill. Complainant is the Frick Company, a corporation of Pennsylvania, engaged in the manufacture of ice making machinery, and the owner by mesne assignments of the patent in suit, which was originally issued to defendant Robert F. Lindsay and Robert H. Hemphill. Defendants are Robert F. Lindsay and wife, Effa S. Lindsay, owners of patents 1,567,523 and 1,606,087, under which they are manufacturing machinery alleged to infringe the patent of complainant. We shall refer to the parties in accordance with the positions occupied by them in the court below.

The original patent, the reissue of which is owned by complainant, is No. 1,442,410, issued January 16, 1923, on an application of Lindsay and Hemphill. Prior to its issuance Lindsay assigned his interest therein to one Carroll. Complainant obtained a license from Hemphill and Carroll, granting the exclusive right to manufacture and sell the invention covered thereby, with an option to purchase at the price of $25,000. After operating under the license for a few months, complainant exercised its rights under the option and the patent was assigned to it. Application for reissue of the patent was filed April 24, 1924, defendant Robert F. Lindsay joining in the application; and it was reissued August 19, 1924. Applications for the patents held by the Lindsays were filed July 3, 1924. The principal contention of defendants is that the patent of complainant is for a mere improvement in the apparatus used for manufacturing ice, and that, in view of the disclosures of the prior art, it must be given so narrow an interpretation as not to be infringed by the device manufactured by defendants.

The patent of complainant covers an air-agitating tube for use in manufacturing ice. As is well known, the process of ice manufacture is to immerse cans of water in brine the temperature of which is lowered below the freezing point of the water. This causes the water in the cans to freeze, and the freezing naturally begins at the sides of the can and proceeds inward. Impurities in the water result in a cloudiness of the ice, which is very undesirable, and it has been discovered that, by blowing air into the water in the can and allowing it to bubble to the top, the advancing walls of ice may be washed clean of impurities, which are caused to collect in the center. These may be pumped out before the freezing of the ice cake is completed, and a clear and transparent product may thus be obtained.

How properly to introduce the air, so as to accomplish the result desired, is a problem which has caused much difficulty. Its introduction by means of a perforated tube extending nearly to the bottom of the can, so as to allow the air to escape at the perforations in the sides and also at the bottom, was well known in the prior art. This tube was in some cases fixed rigidly and in some cases allowed to swing freely in the can of water, but in neither case were the results entirely satisfactory. If fixed rigidly, it was likely to become frozen in the advancing wall of ice, if it did not freeze evenly on all sides. If allowed to swing freely, it was likely to be caught in the crevices of the ice and frozen in. In either case its usefulness was likely to be destroyed before the freezing of the ice cake was completed.

The invention covered by complainant's patent was designed to secure the benefit of the swinging of the tube in the can of water, and at the same time avoid the danger of its being caught in the crevices of the advancing walls of ice. It was known that, because the can was much longer than it was wide, the ice froze toward the center in the form of an ellipse, that the freely moving tube became caught in the crevices of the ice when it was swinging lengthwise the can, and that because of the currents set up in the water it had a tendency to swing lengthwise. The problem was to cause it to swing crosswise. The problem was solved by attaching the tube to a support fastened to the side of the can, so that it would swing on a pivot or hinge crosswise the can, but would be allowed little or no motion in any other direction. There are 19 claims in the patent, but 2 and 12 may be taken as typical and as correctly describing the invention. They are as follows:

"2. A support for air agitator tubes for ice cans, having means for detachable engagement with the ice can, and also having means for swingingly connecting the tube to the support so that the tube hangs pendently from the support and may swing freely to and fro in one plane and is restrained from motion in any other plane."

"12. The combination of an air agitator tube for ice cans, a support on which the tube is bodily swingable in a plane extend-

ing transversely of the can, means for opposing movement of the tube away from said plane, and means to secure the support detachably to an ice can, substantially as set forth."

[1-3] Although the construction of this device seems not to have involved any high order of invention, we think that the patent granted therefor is valid. The patentee undoubtedly solved a troublesome problem connected with the manufacture of ice; and, although the device appears very simple, now that former difficulties have been analyzed and a means devised for solving them, we must not lose sight of the fact that it not only involved change, but also met a real need, as is attested by its extensive use and commercial success. Knowledge after the event is always easy; but, as said by Mr. Justice McKenna in the Grant Tire Case, "the law has other tests of the invention than subtle conjectures of what might have been seen and was not. It regards a change as evidence of novelty; the acceptance and utility of change as a further evidence, even as demonstration." Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 435, 31 S. Ct. 444, 447 (55 L. Ed. 527); U. S. Industrial Chemical Co. et al. v. Theroz Co. (C. C. A. 4th) 25 F.(2d) 387. And if there be doubt as to whether the device should be treated as an invention, or as a mere mechanical improvement, this doubt should be resolved in favor of the validity of the patent, in view of the fact that it filled a recognized need in the industry, that it came immediately into extensive use, and that the Patent Office has issued a patent covering it. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Pangborn Corp. v. W. W. Sly Mfg. Co. (C. C. A. 4th) 284 F. 217; Zip Mfg. Co. v. Pusch (C. C. A. 8th) 2 F.(2d) 828.

[4, 5] And so far as defendants are concerned they are not in a position to question the validity of the patent. Complainant claims under the assignment made by defendant Robert F. Lindsay, and the rule is well settled that the assignor of a patent is estopped to contest its validity against the assignee. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316; Carper v. Crown Cork & Seal Co. of Baltimore City (C. C. A. 4th) 243 F. 200, Id. (D. C.) 229 F. 748; Leader Plow Co. v. Bridgewater Plow Co. (C. C. A. 4th) 237 F. 376. And we think that Mrs. Lindsay is bound by this estoppel as well as her husband. It appears that she and he not only sustain towards each other the relation of husband and wife, but also as partners are engaged in carrying on the business which is alleged to infringe the patent in suit. She is certainly doing business "in such association and privity" with her husband as to be subject to the same estoppel which binds him. Leader Plow Co. v. Bridgewater Plow Co. supra; Crown Cork & Seal Co. v. Carper Automatic Bottling Mach. Co. (D. C.) 229 F. 748, 749. One cannot evade an estoppel by the simple expedient of going into business with his wife.

And even though the patent be given a narrow construction, as being a patent for a mere improvement, we have no doubt that the device manufactured and sold by defendants constitutes an infringement of it. In their device the tube is suspended in the ice can in such a way that, as in the patent of complainant, it can swing freely crosswise the can, but its swinging lengthwise the can is retarded. It is true that no pivot or hinge device is used, but the device used to secure the crosswise and retard the lengthwise motion of the tube is the mechanical equivalent of the pivot or hinge device of complainant. It may be roughly described as follows: Extending crosswise the top of the can and fastened to its sides is a piece of metal containing a groove or channel, with the sides of the groove projecting upwards. In the bottom of this groove and over the center of the can is an elongated or oval hole, with its long axis parallel with the groove and crosswise the can. Attached to the top of the tube is a rectangular block of metal which fits into the groove, with a raised ring or "boss" on the underside and around the tube. The tube is suspended through the hole, and the rectangular block of metal attached to the tube fits into the groove or channel and supports it. The ring or metal boss, by raising the ends of the rectangular block above the bottom of the groove or channel, enables the tube to swing freely back and forth crosswise the can as upon a pivot, when air is forced through the tube and currents are set up in the water. This crosswise movement is made possible by the elongation or oval shape of the hole in the metal extending crosswise the can, and movement lengthwise is retarded by the action of the side of the groove or channel on the rectangular block of metal. There can be no doubt that it does the same thing in substantially the same way as the device covered by complainant's patent and that it accomplishes the same result.

[6] Defendants say that in their device the

tube does not swing in a single plane crosswise the can, but traverses a double elliptical area. This, however, if true, is unimportant. The thing of value in complainant's patent is that motion crosswise the can is facilitated and motion lengthwise is restrained, so that the tube is prevented from being caught in the crevices of the closing ellipse. Exactly the same result is accomplished by defendant's device, and, as shown above, it is accomplished in substantially the same way. As said by Mr. Justice Clifford in Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935 (a case which dealt with a patent for an improvement and not a primary or basic patent):

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring, 1 Cliff. 620 [Fed. Cas. No. 2292].

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th Ed.) § 310."

See, also, Imhaeuser v. Buerk, 101 U. S. 647, 656, 25 L. Ed. 945; Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Leader Plow Co. v. Bridgewater Plow Co., supra; Yancey v. Enright (C. C. A. 5th) 230 F. 641; Baldwin v. Abercrombie & Fitch Co. (C. C. A. 2d) 228 F. 895; Parker v. Automatic Mach. Co. (D. C.) 227 F. 449; U. S. Slicing Machine Co. v. Blakeslee & Co. (C. C. A. 7th) 227 F. 442; Peter T. Coffield & Son v. Spears & Riddle (C. C.) 169 F. 641; Lourie Implement Co. v. Lenhart (C. C. A. 8th) 130 F. 122; Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C. A. 4th) 108 F. 845, 866; Bresnahan v. Tripp Giant Leveller Co. (C. C. A. 1st) 72 F. 920; Herrick v. Tripp Giant Leveller Co. (C. C. A. 1st) 60 F. 80; 20 R. C. L. 1155, 1156.

In the case of Crown Cork & Seal Co. v. Aluminum Stopper Co., supra, this court, speaking through Judge Brawley, said:

"Infringement is not avoided by mere change of form, or renewals of parts, or reductions of dimensions, or the substitution of mechanical equivalents, or the studious avoidance of the literal definition of specifications and claims, or the superadding of some improvement. The court will look through the disguises, however ingenious, to see whether the inventive idea of the original patentee has been appropriated, and whether the defendants' device contains the material features of the patent in suit, and will declare infringement even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement."

[7, 8] While the patent of complainant is not a basic or pioneer patent, this does not mean that it is not entitled to invoke the doctrine of equivalents. The range of equivalents, it is true, depends upon the extent and nature of the invention, and if the invention is broad and primary in character, the range of equivalents will be correspondingly broad; but, where the patent is for a mere improvement, a narrower range of equivalents will be applied. Paper Bag Patent Case, 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122. Any patent, however, has some range of equivalents, unless form is made the indispensable thing. And the rule is especially applicable where the infringer takes the whole gist of the invention, as in this case. U. S. Slicing Mach. Co. v. Wolf, Sayer &

Heller (D. C.) 249 F. 245, 247, Id. (C. C. A. 7th) 261 F. 195. We think, also, that the "general rule is elastic enough to allow the application of the dominant equitable rule that as between the assignor and assignee the construction of the patent must be broad and liberal enough to give full value to the patent assigned, and shut out the assignor from every structure within the fair meaning of the claim." Leader Plow Co. v. Bridgewater Plow Co., supra (C. C. A. 4th) 237 F. 376, 377.

[9] It is argued that a presumption that the device manufactured by defendants does not infringe the patent of complainant arises from the fact that a patent was issued to defendant Lindsay covering the device. But we are not impressed with this argument. As said by this court in the case of Crown Cork & Seal Co. v. Aluminum Stopper Co., from which we have quoted, supra, if the inventive idea of the original patentee has been appropriated, and the alleged infringing device contains the material features of the patent in suit, the court will declare infringement, even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement.

The true rule, as we understand it, with the reason therefor, is well stated by Judge Denison, speaking for the Sixth Circuit Court of Appeals in Herman v. Youngstown Car Mfg. Co., 191 F. 579, at pages 584, 585, as follows:

"We think that the granting of the later patent and defendant's conformity thereto are not of importance in this case on the infringement issue. There are expressions in some reported cases implying that by the later patent the government has granted a right to make and use the article so patented, and that such grant is inconsistent with any construction of the earlier patent which would forbid the manufacture of the later structure. Such implication rests on a fundamental error. A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others. The supposition that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder.

"Another reason sometimes advanced for supposing that the structure of the second does not infringe the claim of the first patent is that the Patent Office has declared that a patentable difference exists. The premise is sound, but not the conclusion. In examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings. Patentable difference does not of itself tend to negative infringement. It may just as well be based upon infringement, plus improvement; and improvement may lie in addition, simplification, or variance. * * *

"As the necessary result of the fundamental principles, it seems that the existence of the later patent can have no tendency to disprove infringement, unless, for other reasons, we have first reached the conclusion that the earlier patent is, as to the later structure, specific, and not generic. If we have reached that conclusion and the correlative conclusion that the earlier patent is entitled only to a narrow range of equivalents, and if we find that the claims of the later patent embody no improvement feature whatever, we will then find our conclusion fortified by the Patent Office declaration that the two structures are different species of the same genus; but, before we can so interpret the Patent Office action, we must have given to the earlier patent a construction which will of itself probably determine the question of infringement, and it is difficult to see how in deciding the underlying question material aid can be had from such Patent Office declaration."

We do not think, however, that in this case the question whether a presumption does or does not arise from the grant of the later patent is a question of practical importance, as the presumption is clearly overcome by the evidence, even if it be held to exist.

[10, 11] Defendants claim that they had begun manufacturing their device before the grant of the reissue patent, and that it is void for that reason. But, as held by the court below, we think that this contention is without merit, as the reissue patent was obtained by complainant without unreasonable delay. Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C. A.) 108 F. 845, 860; Abercrombie & Fitch v. Baldwin, 245 U. S. 198, 209, 38 S. Ct. 104, 62 L. Ed. 240. And, in addition to this, we think that defendant Robert F. Lindsay, having joined

in the application for reissue, is estopped to assert that the patent obtained on such application is void.

For the reasons stated, we think that the learned judge below erred in dismissing the bill. The decree of the District Court is therefore reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed.