## WINE RY. APPLIANCE CO. v. BALTIMORE & O. R. CO.

### No. 3791.

Circuit Court of Appeals, Fourth Circuit.

June 15, 1935.

Gilbert P. Ritter, of Washington, D. C. (Henry K. Muir and Ritter, Mechlin & O'Neill, all of Washington, D. C., on the brief), for appellant.

Edwin S. Clarkson, of Washington, D. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit which asked relief on account of the infringement of fifteen patents relating to locking devices for the doors of drop bottom or hopper bottom railroad cars. Four of these patents and a number of the claims of the remaining eleven were withdrawn from suit at the time of the hearing in the court below. Three of the patents were held valid and infringed as to the claims involved; and the defendant has not appealed from this holding. Three others were held invalid; and complainant assigns no error with respect to them. This appeal relates to the remaining five of the patents, and their respective claims which were in suit below, viz., Kadel and Pilcher patent No. 1,268,725, claims 2 and 11; Wine patent No. 1,431,499, claim 1; Kadel patent No. 1,738,057, claims 7, 15, 16, 22, and 27; Kadel patent No. 1,743,144, claims 8, 9, 15, and 18; and Wine patent No. 1,486,210, claims 1 and 4. The court below found the first of these valid, but not infringed as to the claims in suit, and the remaining four invalid; and from a decree in accordance with these findings, the complainant has appealed. The facts are fully set forth in the opinion of the District Judge, reported in 5 F. Supp. 219, and need not be repeated here.

We agree with the court below as to the validity of the Kadel and Pilcher patent No. 1,268,725. It is true that all of the elements of the combination which it covers are old in the art; but no one before had brought them together to produce a manu-

ally operable closing door with an automatic catch to hold it in closed position for drop bottom or hopper bottom railroad cars. Theretofore, the closing of such doors had been effected by the use of heavy and complicated machinery which accomplished but imperfectly the purpose for which it was intended, with the result that there was considerable loss of lading from their improper closing. The door of the patent, on the other hand, was simple in operation; by eliminating the weight of winding machinery, it increased the carrying capacity of the cars; and it reduced to a minimum the loss resulting from imperfect closing of the doors. That it filled a real need and constituted an important contribution to the art is shown by the fact that it entered into immediate use, so that, whereas some form of winding mechanism for closing the doors of such cars was in universal use by railroads at the time of the invention, this was supplanted within a very few years by doors embodying the principle of the patent. In the year 1918, when the patent was granted, only 402 car sets of the device of the patent were sold; in 1931 96 per cent. of all new hopper cars built were equipped with this type of mechanism. Its value may be judged from the fact that the Norfolk & Western Railroad in 1923, when only 10 per cent. of its cars was equipped with the mechanism, was paying approximately $31,000 per quarter on account of losses of coal in shipment, whereas at the end of 1925, with 87 per cent. of its cars so equipped, claims due to coal losses had been reduced to $3,500 per quarter.

■ The rule which we think applicable in the case was well stated by Judge Severens, speaking for the Circuit Court of Appeals of the Sixth Circuit in Western Electric Co. v. North Electric Co., 135 F. 79, 89, and quoted with approval by us in Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corporation (C. C. A. 4th) 40 F.(2d) 910, 913, a case very much in point here. He said: "While the mere assembling in a new organization of parts of old structures to perform the same function in their new place that they did in the old is not invention, yet where they are so taken and are organized in a new and useful manner, so as to produce a more beneficial result, there may be invention; and when the combination displays the exercise of intuitive skill and genius beyond that possessed

and exercised by those well skilled in the practice of their art, and the discovery is of something new and useful, invention should be recognized."

■ In Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, Mr. Justice Bradley stated the rule as follows: "It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

■ In like manner it may be said that it was a new and useful result to produce a door with locking device for drop bottom or hopper bottom railroad cars which would be manually operable, and which would eliminate the waste, dead weight, and inconvenience resulting from the use of doors with the winding devices then universally used. While commercial success is, of course, not an infallible criterion of invention, it is well settled that there is a presumption in favor of the validity of a patent where it supplies a need in the industry and enters into immediate use. Temco Co. v. Apco Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 441, 31 S. Ct. 444, 55 L. Ed. 527; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corporation (C. C. A. 4th) 40 F.(2d) 910, 914; Pangborn Corporation v. W. W. Sly Mfg. Co. (C. C. A. 4th) 284 F. 217.

■ And we think that the patent was infringed by the Enterprise device used by defendant and also by its X. L. T. devices. That the use of the Enterprise device was an infringement seems perfectly clear. That device has all of the elements of the patent and all operate in the same way, except that the stiffening door bar of the Enterprise device has a notch into which the pivoted hook may drop and support the door in partially closed position, making possible a two-step closing operation. Both devices, however, have doors opening under force of gravity; both use gravity

operated hooks with locking cams for catching the doors and holding them in closed position; both use door bars for stiffening the doors with ends projecting beyond the sides of the doors for engagement with the hooks; both are equipped with sockets designed to furnish a fulcrum for the use of an operating lever in closing; and both are designed for manual operation without necessity for the use of winding machinery. Their similarity in all essential particulars is readily apparent from the following drawings which illustrate their operation:

The notch in the projection of the door bar, making possible the two-step closing operation, was covered by Kadel patent No. 1,434,953; and the Enterprise device was held to be an infringement of that device by the court below and also by the Circuit Court of Appeals of the Sixth Circuit in Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 25 F.(2d) 236. This furnishes no reason, however, for limiting the claims of patent No. 1,268,725 so as not to cover an infringing device. Patent No. 1,434,953 was a mere improvement patent; and it is perfectly well settled that

## Fig. 1
### KADEL & PILCHER PATENT

## Fig. 2
### ENTERPRISE DEVICE

a device which embodies the principles of a basic patent as well as one for an improvement infringes both. The rule was thus stated by Mr. Justice Bradley in Cochrane v. Deener, 94 U. S. 780, 787, 24 L. Ed. 514: "One invention may include within it many others, and each and all may be valid at the same time. This only consequence follows, that each inventor.is precluded from using inventions made and patented prior to his own, except by license from the owners thereof. His invention and his patent are equally entitled to protection from infringement, as if they were independent of any connection with them."

In Cantrell v. Wallick, 117 U. S. 689, 694, 6 S. Ct. 970, 973, 29 L. Ed. 1017, the rule was stated by Mr. Justice Woods, speaking for the Supreme Court, as follows: "Two patents may both be valid when the second is an improvement on the first, in which event, if the second includes the first, neither of the two patentees can lawfully use the invention of the other without the other's consent. Star Salt Caster Co. v. Crossman, 4 Cliff. 568 [Fed. Cas. No. 13,321]. Therefore, letters patent for an improvement on a patented invention cannot be declared void because they include such patented invention. Much less does it lie in the mouth of a party who is infringing both the improvement and the original invention to set up the existence of the first patent as an excuse for infringing the improvement. It is only the patentee of the original invention who has the right to complain of the use made of his invention."

See, also, Frick Co. v. Lindsay (C. C. A. 4th) 27 F.(2d) 59, 63; Lauter & Suter Co. v. Hildreth (C. C. A. 4th) 219 F. 753; New Jersey Zinc Co. v. Singmaster (C. C. A. 2d) 71 F.(2d) 277, 279, and Herman v. Youngstown Car Mfg. Co. (C. C. A. 6th) 191 F. 579, 584. In the case last cited Judge Denison made the following statement of the rule, which we quoted with approval in Frick Co. v. Lindsay, supra, and which is peculiarly applicable here: "We think that the granting of the later patent and defendant's conformity thereto are not of importance in this case on the infringement issue. There are expressions in some reported cases implying that by the later patent the government has granted a right to make and use the article so patented, and that such grant is inconsistent with any construction of the earlier patent which would forbid the manufacture of the later structure. Such implication rests on a fundamental error. A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others. The supposition that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder. Another reason sometimes advanced for supposing that the structure of the second does not infringe the claim of the first patent is that the Patent Office has declared that a patentable difference exists. The premise is sound, but not the conclusion. In examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings. Patentable difference does not of itself tend to negative infringement. It may just as well be based upon infringement, plus improvement; and improvement may lie in addition, simplification, or variance."

And we think it equally clear that patent No. 1,268,725 is infringed by the X. L. T. devices of defendant. The only difference between these devices and the device of the patent is that, whereas the patent has independently movable gravity acting hooks which engage a fixed projection from the door bar, these devices have hooks fixed to the side of the car or hopper and engage them with independently movable gravity acting latches attached to the door bar. There is the same sort of door, the same sort of door bar, the same sort of operation, and the same means of operating the locking device, i. e., the force of gravity. The same result is accomplished in substantially the same way; and we do not think that infringement is avoided by a slight rearrangement of parts within the reach of the skill of any ordinary mechanic, when the heart and substance of the invention is taken. That this is what has happened is readily apparent from a consideration of drawings illustrating the principle of operation of the catch of the patent with that of the infringing devices. Drawings which correctly illustrate the

principle without the immaterial details of the engaging devices are as follows:

DIAGRAMMATIC COMPARISON
KADEL & PILCHER DEVICE
AND
XLT DEVICE

KADEL & PILCHER DEVICE

XLT DEVICE

It is clear, we think, that infringement is not avoided by the substitution of this obvious equivalent for the engaging device of the patent. Whether the patent be treated as a basic or pioneer patent or not, it made a valuable contribution to the art and is entitled to liberal treatment. As said by Chief Justice Taft in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 328, 67 L. Ed. 523:

"In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery, which has substantially advanced the art. His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine may be very meritorious, and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers, and certainly finds no reason to withhold from the really meritorious improver, the application of the rule 'ut res magis valeat quam pereat,' which has been sustained in so many cases in this court."

The rule applicable is thus stated in the leading case of Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717:

"Patentable improvements in machinery are almost always made by changing some one or more forms of one or more parts, and thereby introducing some mechanical principal or mode of action not previously existing in the machine, and so securing a new or improved result. And, in the numerous cases in which it has been held, that to copy the patentee's mode of operation was an infringement, the infringer had got forms and proportions not described, and not in terms claimed. If it were not so, no question of infringement could arise. If the machine complained of were a copy, in form, of the machine described in the specification, of course it would be at once seen to be an infringement. It could be nothing else. It is only ingenious diversities of form and proportion, presenting the appearance of something unlike the thing patented, which give rise to questions; and the property of inventors would be valueless, if it were enough for the defendant to say, your improvement consisted in a change of form; you describe and claim but one form; I have not taken that, and so have not infringed.

"The answer is, my improvement did not consist in a change of form, but in the new employment of principles or powers, in a new mode of operation, embodied in a form by means of which a new or better result is produced; it was this which constituted my invention; this you have copied, changing only the form; and that answer is justly applicable to this patent."

And the rule was applied and stated with great clarity by Mr. Justice Clifford in Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935, from which we quote as follows:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or

their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring, 1 Cliff. [592] 620 [Fed. Cas. No. 2,292].

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th Ed.), § 310."

And in the recent case of Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 41, 50 S. Ct. 9, 12, 74 L. Ed. 147, the Supreme Court, in holding latch for refrigerator doors infringed by a device which employed the same principle of operation with a slight rearrangement of parts, said:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125 [126, 137], 24 L. Ed. 935. * * * That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494."

And what we said in Frick v. Lindsay (C. C. A. 4) 27 F. (2d) 59, 62, is particularly applicable here. We said:

"While the patent of complainant is not a basic or pioneer patent, this does not mean that it is not entitled to invoke the doctrine of equivalents. The range of equivalents, it is true, depends upon the extent and nature of the invention, and if the invention is broad and primary in character, the range of equivalents will be correspondingly broad; but, where the patent is for a mere improvement, a narrower range of equivalents will be applied. Paper Bag Patent Case, 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122. Any patent, however, has some range of equivalents, unless form is made the indispensable thing. And the rule is especially applicable where the infringer takes the whole gist of the invention, as in this case. U. S. Slicing Mach. Co. v. Wolf, Sayer & Heller (D. C.) 249 F. 245, 247; Id. (C. C. A. 7th) 261 F. 195."

In Chicago Lock Co. v. Tratsch, 72 F. (2d) 482, 485, the Circuit Court of Appeals of the Seventh Circuit dealt with an infringement of a patent covering slot machines, in which there was a reversal or transposition of parts for the purpose of performing the same function as was performed by the device of the patent. In holding that there was infringement, the court said:

"The only question presented, therefore, is whether appellant avoids infringement by placing the abutment member P and S on the slide instead of on the guide, and by forming the elongated slot D in the guide instead of the slide, and we are convinced that the question must be answered in the negative. In appellant's devices there is a mere reversal or transposition of parts used in the patent, but they produce the same functions in substantially the same way, and accomplish the same result as the patent. Infringement is not escaped by a mere change of forms without change of function. * * * Appellant, however, contends that the patentee, in order to avoid the prior art, considered and treated the specific locations of his parts as limitations. If this were true, then no doubt the rule laid down in D'Arcy Spring Company v. Marshall Ventilated Mattress Company (C. C. A.) 259 F. 236, would hold appellees to such limitations. But we find nothing in the record to support the factual basis for that rule. It is obvious to us that Hall's novelty did not consist in improving the form, location, or sequence of elements in an existing combination, but in combining the elements, most, if not all, of which were old, to produce a new result."

See, also, Imhaeuser v. Buerk, 101 U. S. 647, 656, 25 L. Ed. 945; Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Leader Plow Co. v. Bridgewater Plow Co. (C. C. A. 4th) 237 F. 376; Yancey v. Enright (C. C. A. 5th) 230 F. 641; Baldwin v. Abercrombie & Fitch Co. (C. C. A. 2d) 228 F. 895; Parker v. Automatic Mach. Co. (D. C.) 227 F. 449; U. S. Slicing Machine Co. v. Blakeslee & Co. (C. C. A. 7th) 227 F. 442; Peter T. Coffield & Son v. Spears & Riddle (C. C.) 169 F. 641; Lourie Implement Co. v. Lenhart (C. C. A. 8th) 130 F. 122; Bresnahan v. Tripp Giant Leveller Co. (C. C. A. 1st) 72 F. 920; Herrick v. Tripp Giant Leveller Co. (C. C. A. 1st) 60 F. 80; 20 R. C. L. 1155, 1156.

We agree with the court below that the other patents involved in this appeal—Wine patent No. 1,431,499, Kadel patent No. 1,738,057, Kadel patent No. 1,743,144, and Wine patent No. 1,486,210—are invalid as to the claims in suit. It is unnecessary to consider whether any of them are anticipated, as we think that, in the light of the prior art, none of them embodies anything more than mere mechanical skill. It certainly did not rise to the dignity of invention to attach the pivot bracket to the door bar in such way as to brace the latter, as covered by the patent first mentioned, or to use a latch with a curved end for engagement with a hook to prevent spreading of the sides of the hopper, or to attach the latch to the door bar instead of to the door, as covered by the second patent. Likewise, we think that it did not require the exercise of the inventive faculty to place the latch flatly against the side of the door bar to relieve the strain on the pivot, as covered by the third patent mentioned, nor to reduce the breadth of the outer end of the projecting door bar and provide it with a marginal flange so as to shorten the hook, as covered by the fourth patent. Given the operating principle of the main patent, all these were mere improvements within the reach of ordinary mechanical skill. See Stelos Co. v. Hosiery Motor-Mend Corporation, 55 S. Ct. 746, 79 L. Ed. ——; Paramount Publix Corporation v. American Tri-Ergon Corporation, 55 S. Ct. 449, 79 L. Ed. 997; Keystone Driller Co. v. Northwest Engineering Corporation, 294 U. S. 42, 55 S. Ct. 262, 79 L. Ed. 747; Saranac Machine Co. v. Wirebounds Co., 282 U. S. 704, 714, 51 S. Ct. 232, 75 L. Ed. 634; Smith v. Magic City Club, 282 U. S. 784, 792, 51 S. Ct. 291, 75 L. Ed. 707; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U. S. 175, 186, 51 S. Ct. 95, 75 L. Ed. 278.

For the reasons stated, the decree appealed from will be reversed in so far as it failed to find infringement of Kadel and Pilcher patent No. 1,268,725 in the use by defendant of the Enterprise and X. L. T. devices to which we have referred. In other respects it will be affirmed.

Affirmed in part and reversed in part.