**SANFORD INV. CO., Inc., et al. v. CRAB ORCHARD IMPROVEMENT CO.**

**No. 4461.**

Circuit Court of Appeals, Fourth Circuit.

Aug. 28, 1939.

Herbert H. Porter, of Washington, D. C. (Sanders & Day, and Joseph M. Sanders, all of Bluefield, W. Va., on the brief), for appellants.

Clarence B. Des Jardins, of Washington, D. C. (Halbert P. Brown, of Washington, D. C., and Richardson & Kemper, of Bluefield, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

Sanford Investment Company, Inc., and Sanford-Day Iron Works, Inc., owner and licensee respectively of patent No. 1,809,-707, relating to an improvement in mine cars, brought this suit in the District Court of the United States for the Southern District of West Virginia, against the Crab Orchard Improvement Company for infringement of claims 3, 7, 9 and 15 of the patent. The improvement claimed in the patent is a hinged front end-gate which is placed on mine cars to facilitate dumping. The District Court held that the patent was invalid because the patentees were not the original inventors, and because the improvement did not involve invention in view of the disclosures of the prior art.

The mine cars referred to are small railroad cars with four straight sides or walls forming a rectangular box or receptacle for coal or ore, and resembling the body of an ordinary dump truck. The maximum length, height and width of a car are limited by the size of the entrance, tunnel, curves in the track, coal seam, or shaft cage in which the car may be hoisted to the surface. On the other hand, it is desirable to carry as much coal as possible in each car so as to increase the tonnage per trip. It is also necessary to provide some means for dumping the load from a car. It has long been common practice to do this by hinging the front end or wall of the car so as to form an end-gate, which lifts up when the car is tilted forward and operates in the same manner as a top-hinged tailgate on a dump truck.

The prior art, which was stipulated by the parties, discloses that it has long been customary to hinge the end-gate to the lateral walls of a car by means of bails, which are arms attached to the opposite side edges of an end-gate and extended at right angles thereto rearwardly of the car's body. These bails are adjacent to the side walls of the car and are pivotally attached to the side walls at a point about one-quarter of a car's length rearwardly from the end-gate. The prior art disclosed: (1) bails made of bars of metal extending rearwardly outside of the lateral walls of

the car, (2) bails made of plate metal extending rearwardly outside the lateral walls, (3) bails made of bar metal extending rearwardly inside the lateral walls, and (4) inside bar bails similar to (3) but having at their forward ends outwardly and downwardly extending hooks which overlap the car's lateral walls at their extreme front upper corners.

The patent calls for bails made of triangular plates of metal and extending rearwardly inside of the lateral walls. The patent further specifies that the upper edge of each plate bail shall coincide with the upper edge of the adjacent side wall of the car and shall at this point be rolled outwardly across the upper edge of the side wall so as to stiffen the bail and restrain spreading of the wall. Plaintiffs' device differs from the prior art only in that for the first time the car is equipped with an inside plate metal bail whose upper edge has been rolled outwardly in the form of a flange overlapping the adjacent side wall.

Various new results are said to be realized in the plaintiffs' device. Outside bar and plate bails are said to be deficient in that they consume space outside the car, thus reducing the maximum overall width and the carrying capacity of the car. In addition, outside bails are said not to relieve the outward pressure of the load against the car's side walls at their extreme front upper corners, where the spreading effect is greatest; and although the maximum width and capacity of a car can be obtained with inside bar bails, they are said not to relieve the spreading effect on the side walls and to have the further evil of jamming when lumps of coal or ore get between the bails and the adjacent sides of the car. Plaintiffs proclaim that all of these defects in the prior construction of end-gates are corrected in the patented device. It is said that inside plate bails will permit maximum width and carrying capacity in the construction of the car, that the bails' rolled upper edges reinforce the side walls and prevent spreading, and that the inside plate bails will not jam like prior inside bar bails, for nothing can get between the plates and the adjacent walls since the overlapping flanges of the bails protect any space that there might be between them.

Admitting everything that has been said about the defects in prior construction

and the excellence of the plaintiffs' device, the patent lacks invention and represents improvements attained by mere mechanical skill. There is no inventive ingenuity in substituting well known plate bails for the equally familiar inside bar bails, or in changing outside plate bails so that they extend rearwardly inside the lateral walls of the car. In constructing the upper edges of their plate bails so that they extend outwardly and overlap the adjacent upper edges of the side walls so as to stiffen the bails and walls, plaintiffs did nothing unusual or original, and utilized the old principle of the hook on inside bar bails. The plaintiffs' patent must therefore be held invalid because the improvements were within the reach of mechanical skill. Wine Railway Appliance Co. v. Baltimore & Ohio R. Co., 4 Cir., 78 F.2d 312.

This holding that the plaintiffs' patent represents mere mechanical skill is supported by the fact that there was substantial evidence to the effect, and the District Court so found, that the patentees were not the first and original inventors of the subject matter of the patent, but one Edward Graff was the originator thereof. Graff, general manager of the New River Company, testified that he had suggested the inside end-gate when purchasing mine cars from the Sanford-Day Iron Works in 1928, and that he had not patented the idea because he "did not think that it took any super knowledge to place the bails from the outside to the inside of the car." The witness Moore, purchasing agent for the New River Company, corroborated Graff's statement. A few days after the patent was taken out Graff complained to the plaintiff that it had patented his idea, and in a correspondence which lasted for several years, the Sanford-Day Company made repeated efforts to purchase Graff's claim to the patent. Without deciding from the conflicting evidence who was the first to conceive the patented device, there is no doubt that Graff did conceive and suggest the idea when purchasing mine cars from the plaintiff, and this fact supports the holding that the inside plate bails were merely a mechanical improvement which any competent engineer might have been expected to design.

The decree of the District Court will therefore be affirmed.